## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA CUMMINGS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC,<br><br>Defendant. | Case No.   5:18-CV-1072 (GTS/TWD)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lisa Cummings, on behalf of herself and all others similarly situated, by and through her undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, alleges, based on personal knowledge as to her own actions and upon information and belief and investigation of counsel as to those of others, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action against Defendant FCA US LLC ("FCA" or the "Company") to obtain redress for FCA's deceptive representations and omissions regarding its use of the dangerous and defectively designed 9-speed automatic transmission supplied by ZF Friedrichshaffen AG ("ZF") (the "9-Speed Transmission").  FCA installed the 9-Speed Transmission in at least thousands of model year 2016 Jeep Cherokees sold throughout the United States (the "Class Vehicles" or "2016 Jeep Cherokee").

2.      Plaintiff brings this action on behalf of a class of all similarly situated persons who purchased or leased a Class Vehicle equipped with the 9-Speed Transmission within the statute of limitations period (the "Class").

3.      The 9-Speed Transmission fails to consistently shift into the gear desired by the driver, thereby causing an increased risk of accident and injury.  The 9-Speed Transmission

exhibits rough, delayed or sudden shifting or failure to shift causing sudden accelerations or decelerations, sudden losses of power, premature transmission wear, and transmission failure (the "Defect").  For example, the 9-Speed Transmission in the Class Vehicles causes the vehicles to make abrupt forward propulsions, to rapidly decelerate, or to suddenly lose power.

4.     FCA has misled consumers regarding the safety and performance of the Class Vehicles.  FCA's uniform misrepresentations and omissions relating to the Class Vehicles' safety and performance stem from the Company's touting of the fuel efficiency and power of the Class Vehicles while failing to inform Plaintiff and the members of the Class that the 9-Speed Transmission presents a significant risk of accident.  Even though FCA knew as early as 2013 that the 9-Speed Transmission was defective and presented a common safety risk, FCA installed the 9-Speed Transmission in the Class Vehicles.  FCA has made repeated efforts to conceal the defects in the 9-Speed Transmission.

5.     FCA's misrepresentations and omissions regarding the Class Vehicles' safety were a material factor in inducing Plaintiff and the other members of the Class to purchase and lease the Class Vehicles.  As a result of FCA's misleading and deceptive conduct, Plaintiff and the members of the Class purchased or leased a vehicle that poses a significantly greater risk of accident than expected.  Moreover, FCA has failed to provide an adequate repair for the 9-Speed Transmission in a timely manner, endangering the property and persons of drivers of the Class Vehicles, as well as passengers and bystanders.

6.     Accordingly, Plaintiff, on behalf of herself and all others similarly situated, asserts six causes of action against FCA for its wrongful behavior, including breach of express and implied warranties, violation of New York General Business Law ("GBL") §§ 349 and 350, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and unjust enrichment,

and seeks restitution, damages, and equitable relief, including disgorgement of profits, and appropriate attorneys' fees and costs and any other relief the Court deems just.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.  This Court also has supplemental jurisdiction over the state law claims pursuant to 32 U.S.C. § 1367.

8.      This Court has personal jurisdiction over the parties because Plaintiff purchased the Class Vehicle in and lives in the State of New York.  Additionally, FCA conducts substantial business in this State, has had systematic and continuous contacts with this State, and has agents and representatives that can be found in this State.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because FCA's contacts are sufficient to subject it to personal jurisdiction in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.  FCA has marketed, advertised, sold, and leased the Class Vehicles in this District.  Furthermore, Plaintiff resides within this District and purchased her Class Vehicle containing the 9-Speed Transmission within this District.

## PARTIES

### I.      Plaintiff

10.      Plaintiff Lisa Cummings is an individual and citizen of the State of New York residing in Parish, New York.  Ms. Cummings is a member of the Class, as defined below.  In or around January 2016, Ms. Cummings purchased a brand-new 2016 Jeep Cherokee with a 9-Speed Transmission from an FCA authorized dealer, Fuccillo, in Adams, New York.

11.     Plaintiff purchased the Class Vehicle because of its reputation for safety and reliability, consistent with her exposure to marketing materials for the Class Vehicle.  Plaintiff has a family and wanted a car that was safe to drive and that did not present a risk of breaking down or getting into accidents.

12.     FCA represented that the Class Vehicles came with:  (1) a Basic Limited Warranty that included bumper to bumper coverage for 3 years or 36,000 miles, whichever occurred first; and (2) a Powertrain Limited Warranty for 5 years or 60,000 miles, whichever occurred first, from the date the vehicle was first placed in service, which covered engine and transmission parts, including the 9-Speed Transmission.  Plaintiff chose to purchase the Class Vehicle based, in part, on these warranties provided by FCA.  The mileage for Plaintiff's Class Vehicle is currently less than 60,000.

13.     Prior to purchasing the Class Vehicle, Plaintiff test drove it and reviewed the specific features and options available.  Based on FCA's representations regarding the Class Vehicle, Ms. Cummings believed that the vehicle was safe and reliable and, therefore, a good value.

14.     Unbeknownst to Ms. Cummings, at the time she purchased the Class Vehicle, it contained the defectively designed 9-Speed Transmission.

15.     FCA knew that the 9-Speed Transmission presented various safety risks but failed to disclose the defect and its attendant safety risks to Ms. Cummings prior to her purchase of the Class Vehicle.

16.     Because of the Defect in the 9-Speed Transmission, Ms. Cummings has experienced multiple instances where the Class Vehicle suddenly accelerated or decelerated – creating a serious risk of an accident.  For example, on one occasion, Ms. Cummings was driving

4

the Class Vehicle on the freeway, with her grandchildren, at a speed of around 70 miles per hour.

Without warning, the Class Vehicle suddenly and quickly decelerated to a speed of around 20 to

25 miles per hour.  The semi-truck behind Ms. Cummings nearly hit the Class Vehicle as a

result.  Due to the problems caused by the 9-Speed transmission, Ms. Cummings avoids driving

the Class Vehicle on the freeway because it is too dangerous.

       17.    Ms. Cummings' Class Vehicle does not change gears reliably and properly.  For

example, it can take a minute or longer for the Class Vehicle to shift from reverse to drive.

       18.    Within around a week after she purchased the Class Vehicle, when the mileage on

it was still well below 36,000, Ms. Cummings returned it to the FCA authorized dealership from

which she purchased it.  Ms. Cummings told them about the Defect – that her Class Vehicle

would accelerate or decelerate rapidly and on its own, that it would not accelerate or decelerate

properly when she tried to cause it to do so, and that it created a safety risk.  They told Ms.

Cummings that they flashed her Class Vehicle and that there would not be any problems with the

9-Speed Transmission.

       19.    On numerous occassions thereafter, Ms. Cummings notified FCA and its

authorized dealer of the Defect and the aforementioned problems she was having with the 9-

Speed Transmission.  Ms. Cummings has taken the Class Vehicle to an FCA authorized dealer

multiple times to have it serviced because of the Defect in the 9-Speed Transmission, including

in January or February 2016, on April 20, 2016, July 1, 2016, March 20, 2017, March 24, 2017,

October 25, 2017, November 8, 2017, and January 11, 2018.  Each time, Ms. Cummings

informed them that the defective 9-Speed Transmission substantially impaired the Class

Vehicle's functioning and created a serious safety hazard.  Unfortunately, FCA and its

authorized dealer have denied that there is a problem with the 9-Speed Transmission and have

failed to repair the problem.  In or around October 2017, Ms. Cummings notified FCA, in writing, about the Defect and the foregoing problems she was having with the 9-Speed Transmission.  On August 6, 2018, through her attorneys, Ms. Cummings sent written notice to FCA of the Defect, FCA's warranty breaches, and other law violations.  FCA has not remedied or offered a remedy for the Defect in the Class Vehicle.

20.     Ms. Cummings does not feel safe using the Class Vehicle.  Ms. Cummings does not use the Class Vehicle on the highway because of the safety risks caused by the Defect.

21.     As a result of FCA's unfair and deceptive conduct; its breach of its contractual, common law, and statutory duties; and omissions and/or misrepresentations associated with the Class Vehicle and the  9-Speed Transmission and its associated safety risks, Ms. Cummings has suffered concrete injury, including but not limited to, out-of-pocket losses and the diminished value of her vehicle.

22.     Ms. Cummings has a need for a vehicle that is safe and reliable and does not present a risk of breaking down or getting into accidents.  If FCA were to remedy the Defect Ms. Cummings would consider purchasing a Class Vehicle again.

**II.     Defendant**

23.     Defendant FCA US LLC is a for-profit limited liability company organized under the laws of the State of Delaware, and maintains its headquarters and principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan.  FCA US LLC is also registered with the State of New York as a foreign limited liability company.  FCA US LLC is wholly owned by Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, England.

24.     FCA designs, engineers, manufactures, markets and sells vehicles under the Chrysler, Jeep, Dodge, Ram, and Fiat brands, among others.  FCA distributes and sells its motor

vehicles and parts through a network of authorized motor vehicle dealers located in every state of the United States.  FCA engages in interstate commerce by selling vehicles through this network, including within the Northern District of New York.

25.     FCA and/or its affiliates and agents designed, manufactured, and/or installed the 9-Speed Transmission in the Class Vehicles.

26.     FCA and/or its affiliates and agents distributed, sold, leased, marketed and warranted the Class Vehicles throughout the United States.

27.     FCA and/or its affiliates and agents developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

## FACTUAL BACKGROUND

**I.     FCA Produced Vehicles Containing A Defective 9 Speed Transmission.**

28.     Since 2013 FCA has designed, manufactured, marketed, distributed, sold and leased vehicles with the 9-Speed Transmission.

29.     FCA represented that the installation of the 9-Speed Transmission in the Class Vehicles was "a critical part of [their] strategy to meet fuel economy requirements over the next several years[.]"[1]  FCA promised that the 9-Speed Transmission would deliver "numerous benefits customers will appreciate,  including aggressive launches, smooth power delivery at highway speeds and improved fuel efficiency versus a six-speed automatic transmission."[2]

---

[1] Robert Brooks, *Chrysler Investing Almost $20 Million at Machining Plant*, AMERICAN MACHINIST (Apr. 28, 2013), http://www.americanmachinist.com/machining-cutting/chrysler-investing-almost-20-million-machining-plant.

[2] Press Kit: 2014 Jeep Cherokee, *All New 2014 Jeep Cherokee: No-compromise Mid-Size SUV Sets a New Standard* (Sept.9, 2013), http://media.fcanorthamerica.com/newsrelease.do?id=14039&mid=426.

30.     The 9-Speed Transmission was supposed to serve as a significant technological advancement from previously employed six-speed automatic transmissions due to its unique 9.8 ratio spread and computer controlled shifting, which were designed together to allow for better performance and fuel economy, while maintaining the ease of use of traditional automatic transmissions.

31.     However, the 9-Speed Transmission was plagued with problems from the start. As a result of the Defect vehicles in which FCA installed the 9-Speed Transmission would experience sudden accelerations or decelerations, sudden losses of power, premature transmission wear, and a failure to shift.  These conditions present a safety hazard because they severely affect the driver's ability to control the car's speed, acceleration, and deceleration.  For example, these conditions make it difficult to safely change lanes, appropriately accelerate from a stop, merge into traffic, or make turns.

II.    **FCA Covered Up The Defect In The 9-Speed Transmission And Continued To Sell Defective Vehicles.**

32.     FCA has been aware (or should have been aware) that the 9-Speed Transmission is defective based on, *inter alia*, pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints made to FCA, the National Highway Traffic Safety Administration ("NHTSA") and FCA's network of dealers, fundamental design guidelines, and testing performed in response to consumer complaints.

33.     Regardless, FCA has concealed and continues to conceal the danger inherent in the use of the 9-Speed Transmission in the Class Vehicles.

34.     For example, in an interview in late 2015, FCA's Chief Executive Officer
("CEO") stated that the problems with the 9-Speed Transmission had been remedied and that the
2016 Jeep Cherokee would not have transmission problems.[3]

35.     Also, in its advertising for the Class Vehicles, FCA failed to disclose the Defect in
the 9-Speed Transmission.  Instead, FCA represented that the 9-Speed Transmission made the
Class Vehicles more fuel efficient while delivering the power drivers appreciate on the road.[4]
Plaintiff and the other members of the Class purchased the Class Vehicles, in part, based on these
representations and omissions by FCA regarding the 9-Speed Transmission.

36.     However, FCA's aforementioned representations and omissions about the 9-
Speed Transmission and the Class Vehicles were false.

37.     FCA also represented that the Class Vehicles came with:  (1) a Basic Limited
Warranty that included bumper to bumper coverage for 3 years or 36,000 miles, whichever
occurred first; and (2) a Powertrain Limited Warranty for 5 years or 60,000 miles, whichever
occurred first, from the date the vehicle was first placed in service, which covered engine and
transmission parts, including the 9-Speed Transmission.  Plaintiff and the other members of the
Class purchased the Class Vehicles based, in part, on these representations by FCA regarding the
Company's warranties for the Class Vehicles.  Unfortunately, FCA has failed to honor these
warranties.

---

[3] Larry P. Vellequette, *Marchionne says FCA will continue to make V-8s despite tightening regs*,
AUTOMOTIVE NEWS (Sept. 14, 2015), 2015 WLNR 27648992.

[4] *2016 Jeep Cherokee: Most Capable Mid-size SUV Sets the Standard for the Segment*, FIAT
CHRYSLER AUTOMOBILES,
http://media.fcanorthamerica.com/newsrelease.do?id=16730&mid=361 (last visited May 19,
2018).

A.   **FCA Received Numerous
Complaints About The Defect In The Class Vehicles.**

38.   Complaints that Class Vehicle owners and lessees filed with the NHTSA and posted to various websites demonstrate that the Defect:  1) persisted in the 2016 Jeep Cherokee/Class Vehicles; 2) is widespread and dangerous; and 3) manifests without warning. The complaints also indicate FCA's awareness of the problems with the transmission and how potentially dangerous the Defect is for consumers.  Below are a small selection of representative complaints filed with the NHTSA or posted to other websites by owners and lessees of Class Vehicles.

This piece of junk vehicle has done nothing but give me problems since the day I bought it!!! . . . . [T]he hunk of junk slams into gear when driving.  It feels like you get rear ended.  It is very dangerous because you don't know when it is going to happen.  I am worried . . . [I will] get involved in[] an accident . . . . Oh and don't let me be going down a steep hill that I have to brake on, the rpm wi[ll] ramp all the way into the red zone and never downshift until I slam the brakes as hard as I can.  I am going to end up in a freaking wre[ck] because of this lemon.  Supposedly they fixed this problem in the 2016, well I am hear to tell you they have not!!!  Oh and [the] service department where I bought the lemon just looks at me like I am crazy.

NOW I am stuck in a Lemon that has negative equity in it and can't even trade out of it unless I want to pay . . . .

dtidwell, Batesville, US, Aug. 1, 2017

. . . .

My wife is the primary driver of this 2016 Jeep Cherokee, and when we bought this, the salesman was pitching his whole "Jeep Reliability" speech! . . . my wife really liked the vehicle, so we ended up getting it . . . . On her way from work, [my wife] called me and said that the Cherokee just all of a sudden started to lunge, and that it felt like it wanted to stall . . . . Shortly after that, she said that the Transmission indicator turned on and [] "Service Transmission" displayed on the info screen. Luckily Huffine's Dodge/Chrysler/Jeep of Plano, TX was close, so she was able to make it there!  The service department was already closed, but yesterday (Dec 15, 2017) they called her and said that the entire transmission was shot! . . . . we're rather upset and disappointed that Jeep hasn't had a recall!  And, that we're in a $30K+ vehicle, that is not reliable.

. . . .

Roberto A., McKinney, TX, US, #27, Dec. 12, 2017

*TRANSMISSION NOT WORKING PROPERLY 2016 JEEP CHEROKEE*,

CARCOMPLAINTS.COM,

https://www.carcomplaints.com/Jeep/Cherokee/2016/transmission/transmission_not_wor

king_properly.shtml (last accessed May 10, 2018).

IN NOVEMBER 2016 I WAS DRIVING IN A 35 MPH ZONE. THE CAR BEGAN TO SKIP AND JUMP FORWARD. WITHOUT WARNING THE SERVICE SHIFTER LIGHT CAME ON AND ALL MY LIGHTS FOR THE SHIFTER CAME ON (P,R,N,D). THE CAR WHICH WAS IN DRIVE IMMEDIATELY SHIFTED INTO PARK AND I LOST ALL CONTROL . . . . THE ISSUE WAS FIXED UNDER WARRANTY AND THEY SAID IT'S A DEFECT IN THE SHIFTER. THE SERVICE DEPARTMENT WAS VERY VAGUE WHEN EXPLAINING THIS TO ME.  TWO WEEKS LATER I WAS TOLD I COULD PICK UP MY CAR. FAST FORWARD TO TODAY 10/04/2017, MY CAR DID THE SAME THING.  I WAS TRAVELING AT 55 MPH THIS TIME AND LOST ALL CONTROL.  I HAD TO JUMP A CURB AND DRIVE ACROSS THE LAWN AND INTO THE PARKING LOT.  I HAVE READ MANY ISSUES ABOUT THIS PROBLEM FROM OTHER JEEP OWNERS. WHY HASN'T A RECALL BEEN ISSUED? ESPECIALLY IF THIS IS A KNOWN ISSUE. I COULD HAVE CAUSED A LARGE ACCIDENT ESPECIALLY SINCE IT WAS DURING RUSH HOUR . . . .

NHTSA ID Number: 11031667, LEXINGTON, SC, Oct. 4, 2017

TRANSMISSION RANDOMLY GOES INTO NEUTRAL & THE CAR DOES NOT MOVE WHEN PRESSING THE GAS.  THE 1ST TIME IT HAPPENED I WAS PULLING OUT ON AN EXTREMELY BUSY HIGHWAY & MAKING A RIGHT TO MERGE INTO TRAFFIC.  MY CAR FROZE IN THE LANE & 3 CARS NEARLY HIT ME AT HIGH SPEEDS . . . . I BROUGHT IT TO THE JEEP DEALERSHIP AS IT IS UNDER WARRANTY & AFTER A FEW HOURS, THEY CALLED & SAID IT WAS READY & IT WAS JUST A "SOFTWARE UPDATE."  WEEKS LATER THE SAME THING HAPPENED ONLY THIS TIME WHILE MAKING A LEFT TO MERGE INTO TRAFFIC. I WAS IN THE MEDIAN WAITING FOR TRAFFIC TO CLEAR & WHEN IT DID, I WENT - AGAIN IT WAS LIKE IT WAS STUCK IN NEUTRAL & THIS TIME I WAS ALMOST HIT BY A SEMI-TRUCK WHO NEARLY JACK-KNIFED TRYING NOT TO HIT ME.  BACK TO THE DEALERSHIP I WENT EXPRESSING MY TERROR & THE FACT THERE IS NO WAY I FEEL SAFE IN THIS CAR UNTIL IT'S FIXED.  I'M SUPPOSE[D] TO PUT MY 15 YEAR-OLD SON

BEHIND THE WHEEL OF IT WHEN HE GETS HIS PERMIT IN A FEW WEEKS?? TODAY IS THURSDAY & MY CAR HAS BEEN AT THE DEALERSHIP SINCE 7:30AM LAST FRIDAY. I HAVE TO PICK IT UP TOMORROW AFTER WORK. THEY CALLED TO TELL ME THEY "CANNOT DUPLICATE THE PROBLEM". . . . I WAS TOLD . . . . "THEY'VE CHECKED ALL SOFTWARE UPDATES, RECALLS, & TSR'S . . ." BUT "THEY'RE ALL BASED ON THE DATE IT WAS BUILT & NOTHING'S COME UP." I AM LITERALLY TERRIFIED TO DRIVE . . . . I'M AFRAID THE NEXT TIME IT HAPPENS I MAY NOT BE AS LUCKY. HELP!!??

NHTSA ID Number: 11079704, TARPON SPRINGS, FL, Mar. 15, 2018

2/12/18, 2016 JEEP CHEROKEE, 26,300 MILES. DRIVING ON I-5 IN WASHINGTON TO SEATTLE . . . . THE VEHICLE WOULD REV BUT SLOWLY ACCELERATE. I WAS ABLE TO GET OFF THE HIGHWAY. ONCE STOPPED THE CAR WOULD REV BUT BARLEY MOVE FORWARD. PULLED INTO A SHOPPING CENTER, I TURNED THE CAR OFF . . . . ONCE I STARTED THE CAR IT WOULD CREEP FORWARD SLOWLY UNTIL IT REACHED 45MPH. THE SERVICE TRANSMISSION CLEARED FROM THE DISPLAY BUT THE CHECK ENGINE LIGHT STAYED ON. THE CAR OPERATED NORMALLY BUT SHIFTED ROUGH. TURNED AROUND TO HEAD HOME THE SERVICE TRANSMISSION DISPLAYED AGAIN AND THE CAR WOULD NOT ACCELERATE. PULLED OVER AGAIN TURNED THE CAR ON AND OFF AND RESUMED NORMAL DRIVING. THE CHECK ENGINE LIGHT IS STILL ON BUT LIMPED 45 MILES HOME. I WILL BE TAKING THE CAR TO THE DEALERSHIP IN THE MORNING. MULTIPLE COMPLAINTS ABOUT THIS ISSUE FOR THE VEHICLE.

NHTSA ID Number: 11072447, OAK HARBOR, WA, Feb. 13, 2018

THE TRANSMITION SHIFT[S] HARD AND CAUSES WHIP LASH AND STICKS IN GEAR, SKIPS GEARS, IT [IS] HORRIBLE ETC.

NHTSA ID Number: 10910174, HARRISONBURG, VA, September 28, 2016

TRANSMISSION STALLING WHILE STARTING 0-20 MPH. HARD SHIFTS AND SERVICE LIGHT FLASHING. AFTER SEVERAL INSTANCES, VEHICLE TRANSMISSION STOPPED WORKING AS I APPROACHED A STOP SIGN. I STOPPED, SHUT OFF AND RESTARTED THE VEHICLE IN PARK, SHIFTED TO DRIVE AND THE VEHICLE OPERATED IN REVERSE.

NHTSA ID Number: 11079996, BLACK RIVER FALLS, WI, March 17, 2018

THREE TIMES RECENTLY I WAS PULLING OUT FROM A STOP SIGN AND THE CAR WOULD NOT GO. I THOUGHT THE ENGINE HAD DIED BUT IT WAS STILL ON/RUNNING. THEN ON A SEPARATE INCIDENT I WAS

TRAVELING ON THE INTERSTATE AT 55 MPH WHEN THE SERVICE TRANSMISSION LIGHT SUDDENLY CAME ON AND THE SPEED DROPPED DOWN TO 20 MPH AND I COULD NOT CONTROL THE SPEED.

NHTSA ID Number: 11081185, FLOWERY BRANCH, GA, March 26, 2018

*2016 JEEP CHEROKEE*, NHTSA,

https://www.nhtsa.gov/vehicle/2016/JEEP/CHEROKEE/SUV/4WD#complaints424 (last

accessed May 10, 2018).

> The vehicle slams into gear when driving.  It feels like you get rear ended.  It is very dangerous because you don't know when it is going to happen.  I am worried it will happen when [I] do not want to go forward and get involved into an accident. It is usually at lower speeds but I don't want to allow it to become a problem.  I have dropped it off at the dealer and hope they can resolve the problem. Orange coast Ram in Costa Mesa, CA. I have my fingers crossed because everything I read with other people experience is that it is a common problem.

> - Brett F., Huntington Beach, CA, #26, US, Dec. 9, 2017

> The transmission does not shift properly.  I have taken it into the shop at least 4 times to get this problem fixed.  They keep telling me its a software updates, but the rough shift or non-shifting starts again in about 3-4 day[s] after I get my vehicle back.  It shifts fine until 4 gear and then it does not shift anymore and grinds the gears.

> Erin B., Angier, NC, USA, # 15, Sep. 8, 2016

*TRANSMISSION NOT WORKING PROPERLY 2016 JEEP CHEROKEE*,

CARCOMPLAINTS.COM,

https://www.carcomplaints.com/Jeep/Cherokee/2016/transmission/transmission_not_wor

king_properly.shtml (last accessed May 10, 2018).

> The jeep[']s transmission is just AWFUL, it jerks, it skips gears it get[s] stuck in gear and at times it won[']t even engage.  It's as if you are getting whiplash when it shifts and your not even in a crash, w[h]ich is a good thing [I suppose], but for the cost of the vehicle it should not have this problem.  It's been i[n] the shop several times to NO AVAIL.

> Frederick W., Harrisonburg, VA, USA # 7, Mar. 6, 2016

2016 Jeep Cherokee went in the shop for a week due to the service transmission problem coming on while on the highway (lost all power on the 75mph highway I was on-thank goodness I was able to get over to the shoulder before it completely died). Dealership replaced the transmission module and reflashed everything after 1 week there.  Got it back yesterday and this morning lost all power again and the service engine light came on.  Had it towed to the dealership.  Very frustrating that you leave a vehicle at a dealership for a week and it breaks right after you get it back- a 2016 vehicle at that.

k9beck, Amarillo, TX, USA, #6, Jun. 29, 2016,

*TRANSMISSION NOT WORKING PROPERLY 2016 JEEP CHEROKEE*,

CARCOMPLAINTS.COM,

https://www.carcomplaints.com/Jeep/Cherokee/2016/transmission/transmission_not_wor

king_properly-2.shtml (last accessed May 10, 2018).  As the complaints demonstrate the

Defect persists in the 2016 Jeep Cherokee/Class Vehicles and FCA has had every reason

to know.

### B.    FCA Failed To Correct The Defect In The Class Vehicles.

39.    In response to the numerous complaints about the Defect FCA issued a number of

Technical Service Bulletins ("TSB") and software updates to its dealers for the Class Vehicles.

40.    On December 5, 2015, FCA issued TSB 08-120-15 covering the 2014 to 2016

Jeep Cherokee.  TSB 08-120-15 informed dealers of the procedure to follow in the event

customers "describe[d]" [that] the instrument cluster 4WD indicator lamp [was] illuminated

and/or [that there was] an intermittent no start condition."

41.    In mid-August 2016 ZF reported to FCA and NHTSA that the sensor cluster it

produced from 2013 to 2014 that was a component in the 9-Speed Transmission was defective

and could cause the vehicle to randomly shift to neutral.  FCA issued a recall – the remedy was a

software update that would purportedly prevent the transmission from shifting to neutral or

would give an adequate warning beforehand.

42.     On August 31, 2016, FCA issued TSB SB-21-013-16, covering its 2016 Jeep Cherokee.  TSB SB-21-013-16 revised TSB 21-013-16 which had been issued a few months earlier on March 25, 2016.  TSB SB-21-013-16 informed dealers of the procedure to be followed in the event customers "indicated that their transmission shift quality may be erratic."

43.     On February 21, 2017 FCA issued TSB 18-018-17 to its dealers, superseding TSB 18-014-16 issued on September 3, 2016, covering the 2016 Jeep Cherokee.  TSB 18-018-17 informed dealers of the procedure to be followed in the event customers experienced "[a] Transmission Tip-In Bump (when accelerating out of 4th gear)."

44.     On April 4, 2017 FCA issued TSB 21-008-17 covering the 2016 Jeep Cherokee, which superseded TSB 21-008-17 issued on February 21, 2017.  TSB 21-008-17 informed dealers of the procedure to follow for customers who reported "[a] harsh 4-5 upshift[,]" "5-4 coast down transmission shift quality enhancement[,]" "[l]ess than desired low speed drivability and response to accelerator pedal input[,]" "[l]ess than desired transmission shift quality[,]" a "[t]ransmission [that] is slow to upshift after releasing the accelerator pedal[,]" "[l]ess than optimal transmission shift timing, driving up and down hills[,]" or "[l]ess than desired Engine Stop/Start re-engagement or smoothness."

45.     The TSBs and software updates did not repair the Defect.

46.     When consumers present the Class Vehicles to authorized FCA dealers to repair the Defect, rather than repair the Defect FCA dealers claim the vehicles are functioning properly or conduct repairs or software updates that are ineffective.

47.     To this day, FCA still has not notified Plaintiff and Class Members that the Class Vehicles suffer from a systemic defect that causes the transmission to malfunction.

48.     The existence of the Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle.  Had Plaintiff and Class Members known that the Class Vehicles were equipped with defective transmissions they would not have purchased or leased them or would have paid less for them.

49.     Reasonable consumers, like Plaintiff and Class Members, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  They also expect that FCA would not sell or lease vehicles with known safety defects, and would disclose any such defects to its consumers when it learns of them.  They did not expect FCA to fail to disclose and try to cover up the Defect.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action on her own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following proposed Class and New York Subclass:

> **Class**
> All persons who purchased or leased a 2016 Jeep Cherokee equipped with the 9-Speed Transmission.
>
> **New York Subclass**
> All members of the Class who reside in New York State or purchased or leased in New York State a 2016 Jeep Cherokee equipped with the 9-Speed Transmission.

51.     Plaintiff reserves the right to amend the above definitions, or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

52.     Plaintiff is a member of the Class and New York Subclass.

53.     Excluded from the Class and New York Subclass are FCA; any parent, subsidiary, or affiliate of FCA; any entity in which FCA has or had a controlling interest, or which FCA

otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of FCA.

54.     This action satisfies all the requirements for a class action under Rule 23(b)(3):

55.     <u>Numerosity:</u> The Class and New York Subclass are so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.  There are at least thousands of Class Vehicles that have been sold or leased in the United States and within the State of New York, though the exact number and identities of the members of the Class and New York Subclass are currently unknown.

56.     <u>Commonality and Predominance:</u> There are questions of law or fact common to the members of the Class and New York Subclass that predominate over any questions affecting only individual members, including, but not limited to, the following:

a.     Whether the 9-Speed Transmission installed in the Class Vehicles contains a design defect and/or a defect in material, manufacturing, and/or workmanship;

b.     Whether the 9-Speed Transmission installed in the Class Vehicles presents a safety risk;

c.     Whether FCA knew or should have known that the 9-Speed Transmission installed in the Class Vehicles is defective and presents a safety risk and, if so, how long FCA has known or should have known of it;

d.     Whether FCA had a duty to disclose that the 9-Speed Transmission installed in the Class Vehicles is defective and/or presents a safety risk;

e.     Whether FCA breached its duty to disclose that the 9-Speed Transmission installed in the Class Vehicles is defective and/or presents a safety risk;

f.     Whether FCA intentionally and knowingly falsely misrepresented, concealed, suppressed, and/or omitted material facts, including the fact that the 9-Speed Transmission installed in the Class Vehicles is defective and/or presents a safety risk;

g.   Whether members of the Class and New York Subclass overpaid for the Class Vehicles;

h.   Whether the software provided by FCA adequately remedied the safety hazard created by the 9-Speed Transmission;

i.   Whether FCA breached its express and/or implied contractual obligations to Plaintiff and members of the Class and New York Subclass;

j.   Whether FCA violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

k.   Whether FCA's conduct as described herein breached its express or implied warranties to Plaintiff and the members of the Class and New York Subclass;

l.   Whether FCA's conduct as described herein was deceptive and/or misleading, including whether FCA negligently misrepresented or omitted material facts, including the fact that the 9-Speed Transmission installed in the Class Vehicles is defective and/or presents a safety risk;

m.   Whether FCA made material misrepresentations and/or omissions concerning the standard, quality, or grade of the Class Vehicles and the 9-Speed Transmission;

n.   Whether FCA's conduct as described herein violated New York GBL § 349 *et seq.*;

o.   Whether FCA's conduct as described herein violated New York GBL § 350 *et seq.*;

p.   Whether FCA was unjustly enriched by the conduct described herein;

q.   Whether Plaintiff and the members of the Class and New York Subclass are entitled to equitable relief, including, but not limited to, restitution or injunctive relief -- including a repair of the defectively designed 9-Speed Transmission; and

r.   Whether Plaintiff and the other members of the Class and New York Subclass are entitled to damages and other monetary relief and, if so, in what amount.

57.   <u>Typicality:</u> The claims asserted by Plaintiff are typical of the claims of the members of the Class and New York Subclass she seeks to represent.

18

58.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class

and New York Subclass, and Plaintiff has retained attorneys experienced in class and complex

litigation.

59.     <u>Superiority</u>: A class action is superior to other available methods for the fair and

efficient adjudication of the controversy, for at least the following reasons:

a.      Absent a class action, members of the Class and New York
        Subclass, as a practical matter, will be unable to obtain redress;

b.      It would be a substantial hardship for most individual members of
        the Class and New York Subclass if they were forced to prosecute
        individual actions;

c.      When the liability of FCA has been adjudicated, the Court will be
        able to determine the claims of all members of the Class and New
        York Subclass;

d.      A class action will permit an orderly and expeditious
        administration of the Class and New York Subclass members'
        claims; foster economies of time, effort, and expense; and ensure
        uniformity of decisions;

e.      The lawsuit presents no difficulties that would impede its
        management by the Court as a class action;

f.      FCA has acted on grounds generally applicable to members of the
        Class and New York Subclass, making class-wide monetary relief
        appropriate; and

g.      Prosecuting separate actions by individual members of the Class
        and New York Subclass would create a risk of inconsistent or
        varying adjudications with respect to individual members that
        would establish incompatible standards of conduct for FCA.

60.     Plaintiff also seeks certification under Rule 23(b)(2).  FCA has acted or refused to

act on grounds that apply generally to members of the Class and New York Subclass, including

failing to provide complete remedial measures for the defective 9-Speed Transmission, such that

final injunctive relief, including corrective advertising, appropriate repairs and/or replacements,

and other injunctive relief, is appropriate in respect to the Class and New York Subclass as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Magnuson-Moss Warranty Act ("MMWA")
### 15 U.S.C. § 2301, *et seq.*
### (On behalf of the Class or, alternatively, the New York Subclass)

61.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

62.     Plaintiff brings this count under the Magnuson-Moss Warranty Act ("MMWA") 15 U.S.C. § 2301, *et seq.*, on behalf of herself and the Class or, alternatively, on behalf of the New York Subclass.

63.     Plaintiff and the members of the Class and New York Subclass are "consumers" within the meaning of MMWA, 15 U.S.C. § 2301(3).

64.     FCA is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

65.     The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

66.     The MMWA, 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

67.     In connection with the purchase or lease of each of the Class Vehicles, FCA provided Plaintiff and members of the Class and New York Subclass with one or more express warranties, including: (1) a Basic Limited Warranty which includes virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for 5 years or 60,000 miles whichever occurs first, from the date the vehicle was first

placed in service, which covers engine and transmission parts including the 9-Speed

Transmission.  Under warranties provided to Plaintiff and members of the Class and New York

Subclass, FCA promised to repair or replace covered defective engine components arising out of

defects in materials and/or workmanship, including the 9-Speed Transmission, at no cost to

owners and lessees of the Class Vehicles.

68.     FCA's express warranties are written warranties within the meaning of the

MMWA, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties fall within the meaning

of the MMWA, 15 U.S.C. § 2301(7).

69.     As alleged herein, FCA breached these warranties.  Without limitation, the Class

Vehicles share a common defect in that they are equipped with a 9-Speed Transmission that is

defectively designed and unsafe, contrary to FCA's representations about its vehicles.  Through

its repeated transmission TSBs of the Class Vehicles, FCA has acknowledged that the Class

Vehicles are not of the standard, quality, or grade that FCA represented at the time of purchase

or lease.

70.     Affording FCA a reasonable opportunity to cure its breach of warranties would be

unnecessary and futile.  FCA has had over two years to provide a suitable remedy for the defect

in the Class Vehicles and has failed to do so.

71.     At the time of sale or lease of each Class Vehicle and all relevant times thereafter,

FCA knew, should have known, or was reckless in not knowing of its misrepresentations and

omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless

failed to rectify the situation and/or disclose the defect.  Accordingly, the remedies available

under any informal settlement procedure would be inadequate and any requirement that Plaintiff

or the members of the Class and New York Subclass resort to an informal dispute resolution

procedure and/or afford FCA a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

72.     Plaintiff and the other members of the Class and New York Subclass would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because FCA is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the members of the Class and New York Subclass have not re-accepted their Class Vehicles by retaining them.

73.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

74.     By reason of the foregoing, FCA is liable to Plaintiff and the members of the Class and New York Subclass for damages they have suffered as a result of FCA's actions, including diminution in the value of the Class Vehicles, the amount of which will be determined at trial, as well as any other remedies afforded at law or in equity.

## SECOND CAUSE OF ACTION
### New York Deceptive Practices Act
### N.Y. Gen. Bus. Law § 349
### (On behalf of the New York Subclass)

75.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

76.     Plaintiff brings this cause of action on behalf of herself and the other members of the New York Subclass.

77.     Plaintiff and the other members of the New York Subclass were consumers and the end users and intended beneficiaries of FCA's products.

78.     As a manufacturer, marketer, and distributor of vehicles, FCA was engaged in consumer-oriented conduct within the intended ambit of GBL § 349.

79.     FCA's actions and/or omissions as described herein violated GBL § 349 *et seq.*, which was enacted to protect the consuming public from those who engage in deceptive acts or practices in the conduct of any business, trade, or commerce.

80.     Specifically, FCA knowingly misrepresented and intentionally omitted material information regarding the safety and effectiveness of the 9-Speed Transmission installed in the Class Vehicles.

81.     Despite knowledge that the 9-Speed Transmission installed in the Class Vehicles is defective, FCA failed to inform Plaintiff and the members of the New York Subclass that it is defective and presents a safety risk.

82.     A reasonable consumer would understand and believe from FCA's actions and omissions that the Class Vehicles were free of safety hazards.

83.     FCA's deceptive and misleading actions and omissions as set forth herein caused injury to Plaintiff and the members of the New York Subclass, including that they paid a price premium for the Class Vehicles as a direct result of FCA's deceptive actions.

84.     By reason of the foregoing, FCA is liable to Plaintiff and the members of the New York Subclass for actual damages they have suffered as a result of FCA's actions, the amount of which will be determined at trial, statutory damages, treble damages, reasonable attorneys' fees and costs, and punitive damages, as well as any other remedies afforded at law or in equity.

**THIRD CAUSE OF ACTION**
**New York False Advertising Act**
**N.Y. Gen. Bus. Law § 350**
**(On behalf of the New York Subclass)**

85.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

86.     Plaintiff brings this cause of action on behalf of herself and the other members of the New York Subclass.

87.     This action is brought to secure redress for the deceptive practices perpetrated by FCA against Plaintiff and the New York Subclass.

88.     As a manufacturer, marketer, and distributor of vehicles, FCA was engaged in the "conduct of business, trade or commerce" within the intended ambit of GBL § 350.

89.     FCA's actions and/or omissions as described herein violated GBL § 350 *et seq.*, which makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."

90.     Through its advertising, FCA caused to be made or disseminated throughout New York statements that were untrue or misleading, and that were known, or which should have been known to FCA, to be untrue and misleading to consumers in New York.

91.     Specifically, FCA knowingly and willfully misrepresented and intentionally omitted material information regarding the safety and effectiveness of the 9-Speed Transmission installed in the Class Vehicles.

92.     Despite knowledge that the 9-Speed Transmission installed in the Class Vehicles is defective, FCA failed to inform Plaintiff and the members of the New York Subclass that it is defective and presents a safety risk.

93.     The misrepresentations and omissions regarding the defect in Class Vehicles, and FCA's failure to disclose and active concealing of the defect, were material and likely to deceive

a reasonable consumer, who would understand and believe from FCA's actions and omissions that the Class Vehicles were free of safety hazards.

94.     FCA's deceptive and misleading actions and omissions as set forth herein caused injury to Plaintiff and the members of the New York Subclass.

95.     By reason of the foregoing, FCA is liable to Plaintiff and the members of the New York Subclass for actual damages they have suffered as a result of FCA's actions, the amount of which will be determined at trial; statutory damages in the amount of $500 for each member of the New York Subclass; treble damages up to $10,000 for each member of the New York Subclass; reasonable attorneys' fees and costs; injunctive relief prohibiting FCA's unlawful and deceptive practices; and punitive damages, as well as any other remedies afforded at law or in equity.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**N.Y. U.C.C. Law §§ 2-314 and 2A-212**
**(On behalf of the New York Subclass)**

96.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

97.     Plaintiff brings this cause of action on behalf of herself and the members of the New York Subclass.

98.     FCA is and was at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

99.     With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

100.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

101.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

102.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

103.    Specifically, the Class Vehicles are inherently defective in that they contain the 9-Speed Transmission, which, as alleged above, is not adequately designed, manufactured, and/or tested and presents a safety risk, including, but not limited to, severely affecting the driver's ability to control the car's speed, acceleration, and deceleration.

104.    FCA was provided notice of these issues by the investigations of the NHTSA, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and others within a reasonable amount of time after the allegations of defects in the Class Vehicles became public.

105.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other members of the New York Subclass have been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**N.Y. U.C.C. Law §§ 2-313 and 2A-210**
**(On behalf of the New York Subclass)**

106.    Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

107.    Plaintiff brings this cause of action on behalf of herself and the members of the New York Subclass.

108.   FCA is and was at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

109.   With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

110.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

111.   In connection with the purchase or lease of each of the Class Vehicles, FCA provided Plaintiff and members of the Class and New York Subclass with one or more express warranties, including: (1) a Basic Limited Warranty which includes virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for 5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service, which covers engine and transmission parts including the 9-Speed Transmission.  Under warranties provided to Plaintiff and members of the Class and New York Subclass, FCA promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the 9-Speed Transmission, at no cost to owners and lessees of the Class Vehicles.

112.   As manufacturers of light-duty vehicles, FCA was required to provide these warranties to purchasers or lessees of the Class Vehicles.

113.   FCA's warranties formed the basis of the bargain that was reached when Plaintiff and other members of the New York Subclass purchased or leased from FCA their Class Vehicles equipped with the defective 9-Speed Transmission.

114.   Plaintiff and the New York Subclass members experienced defects within the warranty period.  Despite the existence of warranties, FCA failed to inform Plaintiff and New

York Subclass members that the Class Vehicles were designed and manufactured in such a way as to present an inherent safety risk, including, but not limited to, severely affecting the driver's ability to control the car's speed, acceleration, and deceleration.

115.    FCA breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied.  FCA has not yet provided an adequate and complete remedy to the safety and usability issues presented by the defective 9-Speed Transmission in the Class Vehicles.

116.    Affording FCA a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile.

117.    Furthermore, the limited warranty promising to repair and/or correct a defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other New York Subclass members whole and because FCA has failed and/or has refused to provide an adequate and complete remedy within a reasonable time.

118.    Accordingly, recovery by Plaintiff and the other New York Subclass members is not restricted to the limited warranty promising to repair and/or correct a defect, and Plaintiff, individually and on behalf of the other New York Subclass members, seeks all remedies as allowed by law.

119.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered because of FCA's conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other New York Subclass members'

28

remedies would be insufficient to make Plaintiff and the other New York Subclass members whole.

120.     Finally, because of FCA's breach of warranty as set forth herein, Plaintiff and the other New York Subclass members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other New York Subclass members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

121.     FCA was provided notice of these issues by the investigations of the NHTSA, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff, and others within a reasonable amount of time after the allegations of defects in the Class Vehicles became public.

122.     As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the other New York Subclass members have been damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of the New York Subclass)**

123.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

124.     Plaintiff brings this cause of action on behalf of herself and the members of the New York Subclass.

125.     By its wrongful acts and omissions of material facts, FCA was unjustly enriched at the expense of Plaintiff and members of the New York Subclass.

126.     At all relevant times, FCA knew that the 9-Speed Transmission was defective.

127.    Nevertheless, FCA continued to market and sell vehicles known to contain a defect that placed consumers and the general public in danger.

128.    As a result, FCA was unjustly enriched at the expense of Plaintiff and other members of the New York Subclass because it sold and leased at a profit defective cars whose value was artificially inflated by FCA's concealment of defects and safety risks associated with the 9-Speed Transmission, and Plaintiff and the members of the New York Subclass have overpaid for the cars and been forced to pay other costs.

129.    It would be inequitable and unconscionable for FCA to retain the profit, benefit, and other compensation it has obtained from its fraudulent, deceptive, and misleading conduct alleged herein.

130.    By reason of the foregoing, Plaintiff and the New York Subclass are entitled to restitution and disgorgement by FCA of all monies unjustly and inequitably retained by FCA in connection with its sale of the Class Vehicles, as well as any other remedies afforded at law or in equity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class and New York Subclass, respectfully requests that the Court grant relief against FCA as follows:

a.    Certifying this action as a class action, with the Class and New York Subclass as defined above;

b.    Appointing Plaintiff as representative of the Class and New York Subclass;

c.    Appointing Plaintiff's counsel as counsel for the Class and New York Subclass;

d.    Issuing proper notice to the Class and New York Subclass at FCA's expense;

e.      Awarding compensatory damages to Plaintiff and the members of the Class and New York Subclass in an amount according to proof at trial;

f.      Awarding treble damages to Plaintiff and the members of the Class and New York Subclass in an amount according to proof at trial;

g.      Awarding statutory damages to Plaintiff and the members of the Class and New York Subclass;

h.      Awarding punitive damages to Plaintiff and the members of the Class and New York Subclass;

i.      Awarding restitution and disgorgement of FCA's revenues or profits to Plaintiff and members of the Class and New York Subclass;

j.      Awarding prejudgment interest on the monies wrongfully obtained by FCA from the date of collection through the date of entry of judgment in this action;

k.      Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action to Plaintiff and the members of the Class and New York Subclass to the extent permitted by GBL §§ 349 & 350 or other applicable law; and

l.      Awarding Plaintiff and the Class and New York Subclass such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Dated: September 7, 2018
White Plains, New York

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: <u>s/ Todd S. Garber</u>
Todd S. Garber (519821)
D. Greg Blankinship (519819)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
tgarber@fbfglaw.com
gblankinship@fbfglaw.com

*Attorneys for Plaintiff and the Putative Classes*