**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA CUMMINGS, individually and on behalf of all others similarly situated, | Case No. 5:18-cv-01072-GTS-TWD |
| Plaintiff, | Hon. Glenn T. Suddaby<br>United States District Judge |
| v. | |
| FCA US LLC, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**TO DEFENDANT FCA US LLC'S MOTION TO DISMISS CLASS ACTION**
**COMPLAINT OR, ALTERNATIVELY, TO DISMISS CLASS ALLEGATIONS**

{00297210 }

# **TABLE OF CONTENTS**

Table of Authorities .......................................................................................................... iii

Introduction ........................................................................................................................ 1

Factual Background ............................................................................................................ 2

I.      Plaintiff Experienced Problems With The Class
        Vehicle Immediately After Purchase And Defendant Failed To Fix It. ............................ 2

II.     Defendant Knew The 9-Speed Transmission
        Was Defective But Concealed That Fact From Consumers. ................................................ 3

Argument ............................................................................................................................ 5

I.      Plaintiff Has Article III Standing. .................................................................................... 5

        A.  Plaintiff Suffered Injury As A Result Of The Defect. ................................................ 6

        B.  Plaintiff Was Injured When She Purchased The Defective Class Vehicle ................ 7

        C.  Plaintiff Also Has Standing Based On
            The Diminished Value Of The Class Vehicle. ........................................................... 9

II.     Plaintiff's Statutory Fraud Claims Are Well Pleaded. ....................................................... 9

        A.  Plaintiff Properly States A Material
            Omission Claim Under GBL §§ 349 And 350. ......................................................... 10

        B.  Plaintiff Has Pleaded Sufficient Facts To Plausibly
            Allege That Defendant Had Prior Knowledge Of The Defect. ................................. 11

        C.  Plaintiff Has Adequately Pleaded That She Was Injured. ........................................ 13

III.    The Complaint Adequately Sets Forth A Cause Of Action
        For Breach Of The Implied Warranty Of Merchantability. ............................................. 14

IV.     The Complaint Adequately Sets Forth
        A Cause Of Action For Breach Of Express Warranty. ..................................................... 17

V.      Plaintiff Properly Pleads Her
        Magnuson-Moss Warranty Act Claim. ............................................................................ 21

VI.     Plaintiff's Unjust Enrichment Claim Should Proceed. ..................................................... 22

VII.    Plaintiff's Class Allegations Are Proper. ......................................................................... 22

Conclusion ........................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abrams v. Gen. Motors Corp.*,
    120 Misc.2d 371 (Sup. Ct. N.Y. Cnty. 1983) ........................................................ 11

*Alin v. Am. Honda Motor Co.*,
    No. 08-cv-4825, 2010 WL 1372308 (D.N.J. Mar. 31, 2010) ................................... 20

*All-Tronics, Inc. v. Ampelectric Co.*,
    354 N.Y.S.2d 154 (A.D. 2d Dep't 1974)................................................................. 17

*Alvarez v. NBTY, Inc.*,
    No. 17-567, 2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ....................................... 25

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ................................................................................... 7

*Bristol Vill., Inc. v. Louisiana-Pac. Corp.*,
    170 F. Supp. 3d 488 (W.D.N.Y. 2016) ................................................................... 21

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S.Ct. 1773 (2017)........................................................................ 2, 3, 23, 24

*Bristow v. Lycoming Engines*,
    No. 06-1947, 2007 WL 1106098 (E.D. Cal. Apr. 19, 2007) ..................................... 9

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*,
    No. 17-2161, 2018 WL 1377608 (E.D. La. Mar. 19, 2018) ..................................... 25

*Chernus v. Logitech, Inc.*,
    No. 17-673, 2018 WL 1981481 (D.N.J. Apr. 27, 2018)........................................... 25

*City of New York v. Smokes—Spirits.Com, Inc.*,
    12 N.Y.3d 616 (2009) ............................................................................................ 10

*Comstock v. General Motors Corp.*,
    99 N.W.2d 627 (Mich. 1959)................................................................................. 17

*Cox v. Chrysler Grp., LLC*,
    No. 14-7573, 2015 WL 5771400 n.7 (D.N.J. Sept. 30, 2015)........................... 11, 20

*Daffin v. Ford Motor Co.*,
    458 F.3d 549 (6th Cir. 2006) ................................................................................... 7

*Day v. Air Methods Corp.*,
    No. 17-183, 2017 WL 4781863 (E.D. Ky. Oct. 23, 2017) ...................................... 25

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).................................................................................... 7

*Dennis v. IDT Corp.*,
   No. 18-2302, 2018 WL 5631102 (N.D. Ga. Oct. 18, 2018) .................................................... 23

*Denny v. Ford Motor Co.*,
   87 N.Y.2d 248, 662 N.E.2d 730 (N.Y. 1995) ........................................................................ 15

*Dixon v. Ford Motor Co.*,
   No. 14-6135, 2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ...................................... 10, 11, 12

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) ....................................................................................... 12

*Donnenfeld v. Petro, Inc.*,
   333 F. Supp. 3d 208 (E.D.N.Y. 2018) ................................................................................... 14

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
   No. 17-564, 2017 WL 4224723 (N.D. Cal. Sep. 22, 2017) ..................................................... 25

*Fullwood v. Wolfgang's Steakhouse, Inc.*,
   No. 13-7174, 2017 WL 377931 (S.D.N.Y. Jan. 26, 2017) ........................................................ 8

*Giarrantano v. Midas Muffler*,
   630 N.Y.S.2d 656 (City Ct. Yonkers, 1995) .......................................................................... 11

*Gladstone Realtors v. Bellwood*,
   441 U.S. 91 (1979) ............................................................................................................. 5, 6

*Goldberg v. Kollsman Instrument Corp.*,
   12 N.Y.2d 432 (1963) .......................................................................................................... 17

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   *8 F.Supp.3d 467 (S.D.N.Y. 2014)* .................................................................................. 13, 14

*Gordon v. Ford Motor Co.*,
   657 N.YS.2d 43 (N.Y. App. Div. 1997) ................................................................................ 16

*Gould v. Helen of Troy Ltd.*,
   No. 16-2033, 2017 WL 1319810 (S.D.N.Y. 2017)................................................................. 21

*Haag v. Hyundai Motor Am.*,
   969 F. Supp. 2d 313 (W.D.N.Y. 2013) ................................................................................. 20

*Hackett v. BMW of N. Am., LLC*,
   10-7731, 2011 WL 2647991 (N.D. Ill. June 30, 2011) ............................................................ 6

*Hadley v. Chrysler Grp., LLC*,
   No. 13-13665, 2014 WL 988962 (E.D. Mich. Mar. 13, 2014) ................................................. 6

*Hubbard v. General Motors Corp.*,
   No. 95-4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) ..................................................... 16

*In re Amla Litig.*,
   No. 16-6593, 2018 WL 5318420 (S.D.N.Y. Oct. 29, 2018) ...................................................... 6

*In re Cablevision Consumer Litig.*,
  864 F.Supp.2d 258 (E.D.N.Y. 2012) ................................................................. 14

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  No. 09-2074, 2017 WL 5971622 (E.D. La. Nov. 28, 2017) ................................ 25

*In re Morning Song Bird Food Litig.*,
  No. 12-1592, 2018 WL 1382746 (S.D. Cal. Mar. 19, 2018) ............................... 25

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*,
  MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008) .............................. 19

*In re Toyota Motor Corp. Hybrid Brake, Mktg., Sales, Practices, & Prods. Liab. Litig.*,
  890 F. Supp. 2d 1210 (C.D. Cal. Sept.12, 2011) ................................................ 6

*In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Practices, & Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) .............................................................. 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
  790 F. Supp. 2d 1152 (C.D. Cal. 2011) ........................................................... 5, 7

*In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation*
  722 F.3d 838 (6th Cir. 2013) ............................................................................. 7

*Kacocha v. Nestle Purina Petcare Co.*,
  *No. 15-5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)* ........................... 5, 6

*Kommer v. Ford Motor Co.*,
  No. 17-296, 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ............................ 8, 14

*Kommer v. Ford Motor Co.*,
  No. 17-0296, 2018 WL 3727353 (N.D.N.Y. Aug. 6, 2018) ......................... 10, 11

*Koulajian v. Trek Bicycle Corp.*,
  No. 90-cv-3156, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992) ............................ 18

*Maalouf v. Salomon Smith Barney, Inc.*,
  No. 02-4770, 2003 WL 1858153 (S.D.N.Y. April 10, 2003) ........................... 22

*McQueen v. BMW of N. Am., LLC*, No.,
  12-6674, 2013 WL 4607353 (D.N.J. Aug. 29, 2013) ........................................ 6

*Molock v. Whole Foods Mkt., Inc.*,
  No. 16-2483, 2018 WL 1342470 (D.D.C. Mar. 15, 2018) ............................... 25

*Nat'l City Commer. Capital Co., LLC v. Global Golf, Inc.*,
  No. 09-0307 2009 WL 1437620 (E.D.N.Y. May 20, 2009) ............................. 22

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
  875 F.3d 107 (2d Cir. 2017) ............................................................................. 14

*Oswego Laborers' Local 214Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ......................................................................................... 10

*Overton v. Bird Brain, Inc.*,
  No. 11-1054, 2012 WL 909295 (C.D. Cal. Mar. 15, 2012).....................................5, 7

*Sanchez v. Launch Tech. Workforce Sols, LLC*,
  No. 17-1904, 2018 WL 1875615 (N.D. Ga. Jan. 26, 2018) ......................................25

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009)...................................................................................14

*Storey v. Attends Healthcare Products, Inc.*,
  No. 15-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) ..................................8

*Swamy v. Title Source, Inc.*,
  No. 17-1175, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) ...................................25

*Szymczak v. Nissan N. Am., Inc.*,
  No. 10-7493, 2011 WL 7095432 (S.D.N.Y. 2011)............................................15, 22

*Tomassini v. FCA US LLC*,
  326 F.R.D. 375 (N.D.N.Y. 2018)....................................................................13, 14

*Tzung v. State Farm Fire & Cas. Co.*,
  873 F.2d 1338 (9th Cir. 1989) ..............................................................................19

*Velasco v. Chrysler Grp. LLC*,
  No. 13-08080, 2014 WL 4187796 (C.D. Cal. Aug. 22, 2014) .................................12

*Wojcik v. Empire Forklift, Inc.*,
  14 A.D.3d 63, 783 N.Y.S.2d 698 (N.Y.A.D. 3 Dept. 2004)...................................15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ...............................................................................8

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 8(a)(3) .......................................................................................2, 22

**Other Authorities**

U.C.C. § 2-314 ..................................................................................................15

UCC Sections 2-714 and 2-715 .............................................................................21

UCC § 2-719(2) .................................................................................................21

## <u>INTRODUCTION</u>

This case is as simple as it is compelling.  FCA US LLC ("Defendant" or "FCA") sold the 2016 Jeep Cherokee ("Class Vehicle") equipped with the defective ZF 9HP 9-speed automatic transmission ("9-Speed Transmission") to Plaintiff Lisa Cummings ("Plaintiff") and the proposed class members without warning them that it was defective, in breach of its warranties and in violation of General Business Law ("GBL") §§ 349 and 350.  Defendant has known since around 2013 that its vehicles equipped with the ZF 9HP- 9-speed automatic transmission were defective - experiencing, among other issues, sudden accelerations or decelerations, sudden losses of power, and failures to shift – making them unsafe (the "Defect").  Despite the fact that Defendant has known about this problem for years, Defendant has continued to equip vehicles with the 9-Speed Transmission - touting its power and fuel efficiency while failing to disclose the defects and safety risks.  Defendant recently agreed to settle another class action, *Granillo v. FCA US LLC*, 16-00153 (D.N.J), involving vehicles equipped with the defective 9-Speed Transmission, including the 2014 and 2015 models of the Jeep Cherokee.  Defendant did not even move to dismiss the operative complaint in *Granillo v. FCA US LLC*, which alleged claims nearly identical to those at issue in the instant case.  Yet surprisingly, Defendant has moved to dismiss the Complaint in the instant case.

Each of the arguments Defendant makes in its motion to dismiss are without merit.  First, Plaintiff has established Article III standing based on the economic loss she suffered after overpaying for the defective Class Vehicle.  Second, Plaintiff sufficiently pleaded claims pursuant to GBL §§ 349 and 350 based on her allegations that Defendant sold the Class Vehicle knowing about and concealing the Defect, causing injury to Plaintiff and the proposed class.

Plaintiff also sufficiently alleged that Defendant breached its implied warranties for the

Class Vehicle because the dealers are its agents and the Defect prevents the Class Vehicle from serving its most basic functions.  Further, Plaintiff sufficiently pleaded that Defendant breached its express warranties.  Among other things, Defendant essentially admitted that the defect is covered under its warranty by servicing Plaintiff's vehicle, and conceded the same in *Granillo*. Given that Plaintiff's warranty claims were sufficiently alleged, her Magnuson-Moss Warranty Act claim also survives since under the law such claims stand or fall with warranty claims. Plaintiff's unjust enrichment claims also survive because such claims can be pleaded in the alternative which FED. R. Civ. P. 8(a)(3) specifically allows.  Finally, Plaintiff's class allegations are proper as the vast majority of courts have found that *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017) does not apply to class actions.  Accordingly, Defendant's motion to dismiss should be denied.[1]

## FACTUAL BACKGROUND

**I.     PLAINTIFF EXPERIENCED PROBLEMS
         WITH THE CLASS VEHICLE IMMEDIATELY
         AFTER PURCHASE AND DEFENDANT FAILED TO FIX IT.**

In January 2016, Plaintiff purchased a new Class Vehicle from an FCA authorized dealer, Fuccillo, in Adams, New York, because of its reputation for safety and reliability consistent with Defendant's advertisements for it.  Complaint ¶¶ 10-11, ECF No. 1.  Plaintiff has a family and wanted a car that was safe to drive and that did not present a risk of breaking down or getting into accidents.  *Id.* ¶ 10.  Defendant represented in its advertising to Plaintiff and the proposed Class, that the Class Vehicles came with: (1) a Basic Limited Warranty that included bumper to bumper coverage for 3 years or 36,000 miles, whichever occurred first; and (2) a Powertrain Limited

---

[1] Plaintiff respectfully requests that should any part of Defendant's motion to dismiss be granted that she be given leave to amend the Complaint.

Warranty for 5 years or 60,000 miles, whichever occurred first, from the date the vehicle was first placed in service, which covered engine and transmission parts, including the 9-Speed Transmission.  *Id.* ¶ 12.  Plaintiff chose to purchase the Class Vehicle based on these advertisements and warranties provided by FCA.  *Id.* ¶ 12.

Immediately after purchasing the Class Vehicle, Plaintiff began to experience problems with it.  Complaint ¶ 18.  The Class Vehicle would suddenly accelerate or decelerate on its own, suddenly lose power, or otherwise not properly shift into gear.  *Id.* ¶¶ 16-18.  Plaintiff took the Class Vehicle to an FCA authorized dealer multiple times asking them to fix this problem, including in January or February 2016, on April 20, 2016, July 1, 2016, March 20, 2017, March 24, 2017, October 25, 2017, November 8, 2017, and January 11, 2018.  *Id.* ¶¶ 18-19.  Defendant and its authorized dealer have denied there is a problem with the 9-Speed Transmission and have failed to fix it.  *Id.*  They would "flash" Plaintiff's Class Vehicle or install a software update, but nothing they did was effective.  *Id.*  Plaintiff also notified Defendant of the problem in writing in 2017 and 2018, but Defendant did not offer any remedy.  *Id.* ¶ 19.

## II.  DEFENDANT KNEW THE 9-SPEED TRAMSMISSION WAS DEFECTIVE BUT CONCEALED THAT FACT FROM CONSUMERS.

Since 2013, FCA has designed, manufactured, marketed, distributed, sold and leased vehicles with the 9-Speed Transmission.  Defendant represented in its advertising and other materials for the Class Vehicle that the 9-Speed Transmission would deliver "numerous benefits customers will appreciate, including aggressive launches, smooth power delivery at highway speeds and improved fuel efficiency versus a six-speed automatic transmission."  Complaint ¶ 29.  However, the 9-Speed Transmission was plagued with problems from the start, and vehicles in which Defendant installed it have suffered from the Defect.  *Id.* ¶ 31.

Since around 2013, Defendant has been aware that the 9-Speed Transmission is defective

based on, *inter alia*, pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints made to FCA, the National Highway Traffic Safety Administration ("NHTSA") and FCA's network of dealers, fundamental design guidelines, and testing performed in response to consumer complaints.  Complaint ¶ 32. Regardless, FCA has concealed the danger inherent in the use of the 9-Speed Transmission in the Class Vehicles.  *Id.* ¶ 33.  For example, in an interview in late 2015, FCA's Chief Executive Officer stated that the problems with the 9-Speed Transmission had been remedied and that the 2016 Jeep Cherokee/Class Vehicle would not have transmission problems.  Complaint ¶ 34.  Additionally, in its advertising for the Class Vehicles, FCA failed to disclose the Defect.  Instead, FCA represented that the 9-Speed Transmission made the Class Vehicles more fuel efficient while delivering the power drivers appreciate on the road.  *Id.* ¶ 35.

Complaints that Class Vehicle owners and lessees filed with the NHTSA and posted to various websites demonstrate that the Defect:  1) persisted in the 2016 Jeep Cherokee/Class Vehicles; 2) is widespread and dangerous; and 3) manifests without warning.  Complaint ¶ 38. Complaints about the Defect were made to NHSTA as early as December 14, 2015.  Declaration of Todd Garber in Support of Plaintiff's Opposition to Defendant FCA US LLC's Motion to Dismiss ("Garber Decl."), Ex. A; Complaint ¶ 32.  Many consumers state that when they returned their Class Vehicle to their FCA authorized dealer seeking to have the Defect repaired, that they would perform a fix that did not work and/or deny that there was anything wrong with the Class Vehicle.  *Id*. ¶ 38.  To this day, Defendant still has not notified Plaintiff and the proposed class that the Class Vehicles suffer from the Defect.  *Id*.¶ 47.  Although Defendant worked to conceal the existence of the Defect, it issued a number of Technical Service Bulletins ("TSBs") and software updates to its dealers in response to consumer complaints about the Defect.  Complaint ¶ 39.  FCA

issued the TSBs and software updates on the following dates:  December 5, 2015,[2] March 25, 2016, August 31, 2016,  September 3, 2016,  February 21, 2017, and April 4, 2017.  *Id*. ¶¶ 39-44. However, the TSBs were ineffective.  *Id*. ¶ 45.

## ARGUMENT

## I.     PLAINTIFF HAS ARTICLE III STANDING.

Plaintiff claims that, as a result of Defendant's conduct, she suffered economic loss because she overpaid for the Class Vehicle, that the value of her Class Vehicle has diminished, and that this economic injury is likely to be redressed by a favorable ruling in this case.  *See* Complaint ¶¶ 10-22, 75-95 .  Article III standing is thus established.  The law is clear that economic injury - including that caused by paying a premium - is sufficient to establish injury for Article III standing purposes.  *Kacocha v. Nestle Purina Petcare Co*., No. 15-5489, 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*., 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("Toyota Unintended Acceleration II") ("overpayment for the defective, unsafe vehicle constitutes the economic-loss injury that is sufficient to confer standing"); *Overton v. Bird Brain, Inc*., No. 11–1054, 2012 WL 909295, at *3 (C.D. Cal. Mar. 15, 2012).  Article III standing can also be caused by the loss of value of a product as a result of the conduct of another.  *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 115 (1979) ("evidence that the economic value of one's own home has declined as a result of the conduct of another certainly is sufficient under Art. III").  The injury is

---

[2] Defendant argues that its issuance of TSBs regarding the 9-Speed Transmission in the Class Vehicles are not sufficient to show that Defendant knew about the Defect before selling the Class Vehicle to Plaintiff because the only TSB that predated Plaintiff's purchase of the Class Vehicle did not concern the Defect.  Def's Mem. at 15.  This argument is without merit.  TSB 08-120-15, which was issued by Defendant on December 5, 2015, outlines a purported repair for the Defect. *See*  Garber Decl., Ex. B; Complaint ¶ 40.

real, as Plaintiff has been harmed by purchasing the defective and unreasonably dangerous Class Vehicle.

### A.      Plaintiff Suffered Injury As A Result Of The Defect.

Plaintiff has alleged multiple concrete injuries that establish Article III standing, including, *inter alia*, (1) overpaying for the defective and unreasonably dangerous Class Vehicle; and (2) suffering diminished value of her vehicle based on the disclosure of the defect.  Complaint ¶¶ 3-5, 21, 83.  Precisely these types of allegations have been sustained in analogous cases.  *See In re Amla Litig*., No. 16-6593, 2018 WL 5318420, at *7 (S.D.N.Y. Oct. 29, 2018) (finding Article III standing when plaintiff and class members paid a price premium as a result of defendant's failure to disclose defect); *Kacocha v. Nestle Purina Petcare Co*., No. 15-5489, 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016).; *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 115 (1979) ("evidence that the economic value of one's own home has declined as a result of the conduct of another certainly is sufficient under Art. III to allow standing to contest the legality of that conduct"); *Hackett v. BMW of N. Am., LLC*, 10-7731, 2011 WL 2647991, at *1 (N.D. Ill. June 30, 2011); *McQueen v. BMW of N. Am., LLC*, No. 12-6674, 2013 WL 4607353, at *3 (D.N.J. Aug. 29, 2013) (finding standing where plaintiff would have had an opportunity to purchase an alternative automobile had concealed defect been exposed); *In re Toyota Motor Corp. Hybrid Brake, Mktg., Sales, Practices, & Prods. Liab. Litig*., 890 F. Supp. 2d 1210, 1217, n.7 (C.D. Cal. Sept.12, 2011) (finding more stringent UCL standing where plaintiffs alleged their vehicles "have diminished at a greater rate than standard depreciation as a result of the Defect").

Defendant's TSBs, software updates, and purported repairs do not deprive Plaintiff of standing particularly where Plaintiff has alleged that they are ineffective.  Complaint  ¶¶ 18-20, 38, 45-46.  Such allegations are sufficient to confer standing.  *See Hadley v. Chrysler Grp., LLC*,

2014 WL 988962, at *6 (E.D. Mich. Mar. 13, 2014) (recognizing plaintiffs may establish standing by asserting that a repair is ineffective).  Moreover, injury in fact for standing under Article III does not require Plaintiff to prove damages for any particular cause of action.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264-65 (2d Cir. 2006) (an injury in fact need not be capable of sustaining a valid cause of action under applicable tort law); *Toyota Unintended Acceleration II*, 790 F. Supp. 2d at 1160; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (same).  Here, Plaintiff's allegations allow this Court to reasonably infer that she suffered harm as a result of her purchase of the defective Class Vehicle, which is sufficient to establish standing.

**B.      Plaintiff Was Injured When She Purchased The Defective Class Vehicle.**

There is no Article III standing requirement that Plaintiff experience an incident where her Class Vehicle exhibited rough, delayed, or sudden shifting or failure to shift, sudden accelerations or decelerations, sudden losses of power, premature transmission wear, or transmission failure. *See Overton*, 2012 WL 909295, at *3 ("economic injury qualifies as 'injury in fact' for the purpose of conferring Article III standing [ ]" where plaintiff "purchased a product without knowledge of its dangers" even if the danger did not manifest).

For example, in *In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation*, the court properly certified a class of owners of defective washing machines regardless of whether the defect had manifested because all owners experienced a common injury – the purchase of a defective product. 722 F.3d 838, 857 (6th Cir. 2013) (injury to all product owners was "at the point of sale" and "occurred when [defendant] failed to disclose the [product's] propensity to develop biofilm and mold growth"); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) ("class members' claims do not differ based on whether there has been actual accelerator sticking because they all allege that Ford delivered a good that did not conform

to Ford's written warranty"); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Similarly, in *Storey v. Attends Healthcare Products, Inc.*, the court found that plaintiffs pleaded an injury in fact where they "paid a premium for [ ] products that defendant falsely represented as being safe for long-term use" because the "[p]laintiffs were harmed economically regardless of whether the alleged defect manifested." No. 15-13577, 2016 WL 3125210, at *4 (E.D. Mich. June 3, 2016). Similarly, in the instant case, Plaintiff was harmed because she paid a premium for the Class Vehicle as a result of Defendant's failure to disclose the Defect.

Moreover, the cases Defendant relies upon in arguing that Plaintiff lacks standing are inapposite. In *Kommer v. Ford Motor Co.*, No. 17-296, 2017 WL 3251598, at *1, 5 (N.D.N.Y. July 28, 2017), the court held that the plaintiff did not sufficiently allege injury because he did not allege that he had taken his vehicle to be repaired or that it was under warranty. In the instant case, Plaintiff alleged that she took her Class Vehicle to be repaired at least eight times. Complaint ¶ 19. Indeed, the court in *Kommer* acknowledged that if the plaintiff had alleged that he had taken his vehicle to be repaired and that the defendant had failed to fix it, then that may have been sufficient to allege that he suffered injury as a result of overpaying for the vehicle. *Kommer*, 2017 WL 3251598, at *5. However, the court explained that it was not deciding that issue because the plaintiff did not allege that the defendant was unable to repair his vehicle. *Id.* In the instant case, Plaintiff alleged damages based on her overpayment for the defective Class Vehicle, that she took it to Defendant to be repaired multiple times, and that the repairs are inadequate. Complaint ¶¶ 3-5, 21, 83. *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13-7174, 2017 WL 377931, at *1 (S.D.N.Y. Jan. 26, 2017) involved a defendant's violation of the Fair and Accurate Credit Transactions Act of 2003 by printing a credit card receipt that included the card's expiration date where the plaintiff had suffered no financial harm. Conversely, Plaintiff overpaid for a defective,

dangerous vehicle because Defendant failed to disclose the Defect.

    **C.**    **Plaintiff Also Has Standing Based On**
                **The Diminished Value Of The Class Vehicle.**

Plaintiff also has standing based on her allegations of economic loss as a result of the diminished value of the Class Vehicle that occurred upon disclosure of the previously-concealed defect.  Complaint ¶¶ 4, 21, 34, 74, 93, 128; *see also Bristow v. Lycoming Engines*, No. 06-1947, 2007 WL 1106098, at \*6 (E.D. Cal. Apr. 19, 2007) (finding Article III standing because the "diminution in value was an immediately cognizable injury"); *In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010) (finding standing based on diminished value of plaintiffs' vehicles after defect was made public).

The Defect has received widespread national media coverage.[3]  Thus, rather than receiving a Class Vehicle that holds its resale and trade-in value, Plaintiff received a vehicle that diminished in value when the Defect was disclosed and widely-reported.  *See Toyota Unintended Acceleration I,* 754 F. Supp. 2d at 1162 (finding standing where plaintiffs pled market value declined based on widespread knowledge of defect).  Plaintiff has Article III standing.

## II.    PLAINTIFF'S STATUTORY FRAUD CLAIMS ARE WELL PLEADED.

Plaintiff, individually, and on behalf of other similarly situated New York residents, alleges that Defendant violated GBL §§ 349 and 350, which prohibit deceptive acts or practices

---

[3] *See, e.g.*, Clifford Atiyeh, *ZF Recalls Nine-Speed Automatic for Random Drops Into Neutral*, CAR AND DRIVER (Aug. 8, 2016), *available at* https://www.caranddriver.com/news/zf-recalls-nine-speed-automatic-for-random-drops-into-neutral; *ZF Recals Hits 505,000 Vehicles With 9-Speed Automatic Transmission*, AUTO WEEK (Aug. 9, 2016), *available at* https://autoweek.com/article/recalls/zf-recalls-505000-vehicles-9-speed-automatic; John Goreham, *First Signs of the Carpocalyse: 2014-2016 Jeep Cherokee*, CAR TALK (Nov. 8, 2016), *available at* https://www.cartalk.com/blogs/car-talk-car-complaints/first-signs-carpocalypse-2014-2016-jeep-cherokee.

and false advertising in the conduct of any business, trade, or commerce or furnishing of any service in New York.  To state a claim under either statute the plaintiff must only allege "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.  *City of New York v. Smokes—Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009); *see also Oswego Laborers' Local 214Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

Plaintiff's Complaint provides that: (1) the Class Vehicles' transmission is dangerously defective; (2) Defendant was aware of the Defect and that the vehicles are not fit for their intended purpose; (3) and Defendant actively concealed and failed to disclose the existence and nature of the defect from Plaintiff and members of the proposed class at the time of purchase and afterwards.  Complaint ¶¶ 3-5, 11-19, 21, 29-48, 75-95.  This properly states Plaintiff's GBL §§ 349 and 350 claims.   Rather, Defendant argues that the Plaintiff has not pled any facts plausibly demonstrating its prior knowledge of the Defect, and that Plaintiff has suffered an injury.  Def.'s Mem. at 10-16.  Defendant is wrong on both counts.

**A.      Plaintiff Properly States A Material**
**Omission Claim Under GBL §§ 349 And 350.**

Plaintiff has sufficiently alleged that Defendant violated GBL §§ 349 and 350 based on omission.  Complaint ¶ 4.  A plaintiff can state a claim for omission under GBL §§ 349 and 350 where the business alone possesses material information that is relevant to the consumer and fails to provide this information.  *Kommer v. Ford Motor Co.*, No. 17-0296, 2018 WL 3727353, at *3 (N.D.N.Y. Aug. 6, 2018); *Dixon v. Ford Motor Co.*, No. 14-6135, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015); *Oswego*, 85 N.Y.2d at 27,.  Indeed, under the New York consumer fraud statute, "[i]f one party has superior knowledge or has the means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud.

[citations omitted]."*Abrams v. Gen. Motors Corp.,* 120 Misc.2d 371, 466 (Sup. Ct. N.Y. Cnty. 1983) (car manufacturer which installed components in its vehicles which it allegedly knew would fail prematurely held to have superior knowledge or means of knowledge).[4]

**B.     Plaintiff Has Pleaded Sufficient Facts To Plausibly Allege That Defendant Had Prior Knowledge Of The Defect.**

Plaintiff sufficiently alleged that Defendant had knowledge of the Defect.  First, Defendant issued multiple TSBs regarding the Defect.  The issuance of a TSB is sufficient to show that an auto manufacturer had knowledge of a defect.  *See, e.g.*, *Dixon*, 2015 WL 6437612, at *9; *Kommer*, 2018 WL 3727353, at *3; *Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 WL 5771400, at *13 n.7 (D.N.J. Sept. 30, 2015).  Defendant argues that its issuance of TSBs regarding the 9-Speed Transmission in the Class Vehicles are not sufficient to show that Defendant knew about the Defect before selling the Class Vehicle to Plaintiff because the only TSB that predated Plaintiff's purchase of the Class Vehicle did not concern the Defect.  Def's Mem. at 15.  This argument is without merit.  First, Plaintiff alleged in the Complaint that TSB 08-120-15 was issued in response to the Defect over a month before Plaintiff purchased the Class Vehicle.  Complaint ¶¶ 10, 39-40. Secondly, TSB 08-120-15 outlines a purported transmission repair.  Garber Decl., Ex. B Complaint ¶¶ 39-40.  Thus, Plaintiff has sufficiently alleged that Defendant issued a TSB to repair the Defect before she purchased the Class Vehicle.

Additionally, TSB 21-013-16 was also issued in response to the Defect two months after Plaintiff purchased the Class Vehicle.  Complaint ¶¶ 10, 39, 42.  Courts have held that TSBs issued two months after a plaintiff's purchase of a vehicle plausibly demonstrate that the defendant knew

---

[4] *See also*, *Giarrantano v. Midas Muffler*, 630 N.Y.S.2d 656 (City Ct. Yonkers, 1995) (plaintiff adequately alleged defendant's knowledge in action alleging brake pad warranty was misleading and deceptive in violation of GBL § 349 in promising brake replacement under warranty and then emasculating that promise by requiring buyer to pay for additional brake system repairs).

about the defect before the purchase.  *See, e.g.*, *Dixon*, 2015 WL 6437612, at *9 (TSB issued two months after plaintiff leased her vehicle sufficient to show that defendant knew about defect before leasing it to plaintiff).   Plaintiff further alleged that thereafter, throughout 2016 and 2017, Defendant issued at least five additional TSBs to address the Defect.   Complaint ¶¶  41-44. Plaintiff has sufficiently alleged knowledge by Defendant based on the issuance of TSBs to address the Defect.

Plaintiff also alleged that Defendant knew about the Defect as a result of consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA").   Complaint ¶¶ 32, 38.  Courts have held that these very same types of complaints are sufficient to show notice. *See, e.g., Doll v. Ford Motor Co*., 814 F. Supp. 2d 526, 548 (D. Md. 2011) (allegations of complaints filed directly with Ford, Ford's authorized dealerships, NHTSA, internet websites, and other public venues, were sufficient to show that Ford had reason to know of the alleged defect); *Velasco v. Chrysler Grp. LLC*, No. 13-08080, 2014 WL 4187796, at *2 (C.D. Cal. Aug. 22, 2014) (finding that plaintiffs properly alleged prior knowledge where, among other things, they alleged that NHTSA had received over 100 complaints related to the alleged defect).   Defendant argues that the NHTSA complaints are not sufficient to show Defendant's knowledge of the Defect because Plaintiff did not identify any complaints made before she purchased the  Class Vehicle. Def's Mem. at 15.  This argument is unavailing.  Complaints about the Defect were filed with the NHSTA at least as early as December 14, 2015, which is over a month before Plaintiff purchased the Class Vehicle.  Garber Decl., Ex. A; Complaint ¶ 32.

Additionally, Plaintiff alleged that since 2013 Defendant has known that the 9-Speed Transmission is defective.  Complaint ¶ 4.  Plaintiff alleged that Defendant knew as a result of "pre-production testing, pre-production design failure mode analysis, production design failure

mode analysis, consumer complaints made to FCA, the National Highway Traffic Safety Administration ("NHTSA") and FCA's network of dealers, fundamental design guidelines, and testing performed in response to consumer complaints. *Id.* ¶¶ 32, 38. Defendant also knew that the 2014 and 2015 models of the Jeep Cherokee that also had the 9-Speed Transmission suffered from the same problems as the Class Vehicle. *Id.* ¶ 34. Obviously, because the 2016 models at issue also utilize the 9-Speed Transmission, Defendant knew the previously identified defect in the prior models would persist in the 2016 Jeep Cherokee. Thus, Plaintiff has sufficiently alleged that Defendant knew about the Defect before Plaintiff purchased the Class Vehicle and failed to disclose it to her.

### C. Plaintiff Has Adequately Pleaded That She Was Injured.

Plaintiff has sufficiently alleged that she suffered injury under GBL §§ 349 and 350 because she alleged that she paid a premium price for the Class Vehicle as a result of Defendant's misrepresentations and omissions regarding the Defect. Complaint ¶¶ 83, 128. Allegations that a plaintiff purchased a product at an inflated price as a result of the defendant's deception is sustainable under GBL §§ 349 and 350. *Tomassini v. FCA US LLC*, 326 F.R.D. 375, 385 (N.D.N.Y. 2018) (*citing Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F.Supp.3d 467, 471 (S.D.N.Y. 2014)).

Defendant argues that Plaintiff "admits that there are TSB repair procedures to address the vehicle 'symptoms' she complained about . . . . [and thus] negates the existence of any § 349 and § 350 injury." Def's Mem. at 11. This is a misrepresentation of Plaintiff's allegations in the Complaint. Plaintiff plainly alleged that Defendant's TSBs, software updates, and purported repairs have failed to remedy the Defect in the Class Vehicles. *See* Complaint ¶¶ 18-20, 38, 45-46, 70, 115. Plaintiff's servicing records document that she repeatedly returned her Class Vehicle

to FCA's authorized dealer for servicing.  *See* Declaration of Lisa Cummings in Opposition to Defendant FCA US LLC's Motion to Dismiss ("Cummings Decl."), Ex. A.  None of the software updates or purported repairs they attempted worked.  *Id*.; Complaint  ¶¶ 18-19.  The case cited by Defendant, *Kommer v. Ford Motor Co*., No. 17-296, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017), is thus inapposite because Plaintiff has alleged that Defendant failed to fix the Defect in her Class Vehicle.  Moreover, because Plaintiff paid an inflated price at the time of purchase, even if Defendant did repair the Defect Plaintiff would still have an inflated price claim and would be entitled to at least statutory damages.  *Tomassini*, 326 F.R.D. at 385.

Relying on *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) and *In re Cablevision Consumer Litig.*, 864 F.Supp.2d 258, 267 (E.D.N.Y. 2012), Defendant also argues that Plaintiff has no GBL §§ 349 and 350 injury because she does not plead any injury beyond a contractual injury.  Def.'s Mem. at 11.  Defendant has mistated the law.  "[T]hose cases found no GBL injury where the plaintiffs alleged damages in the amount of the purchase price of their contracts, but failed to allege that defendants had denied them the services for which they contracted."  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co*., 875 F.3d 107, 125 (2d Cir. 2017) (internal quotations, citations omitted); *Donnenfeld v. Petro, Inc*., 333 F. Supp. 3d 208 (E.D.N.Y. 2018).  In the instant case, Plaintiff alleged that as a result of Defendant's deceptive conduct in violation of GBL §§ 349 and 350, she overpaid for a defective product and that Defendant's purported repair attempts failed.  Complaint  ¶¶ 10-20, 38, 45-46, 70, 115.

## III.   THE COMPLAINT ADEQUATELY SETS FORTH A CAUSE OF ACTION FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY.

Defendant next argues that Plaintiff's claim for breach of the implied warranty of merchantability should be dismissed because the vehicles at issue were merchantable as a matter of law.  However, a vehicle is <u>not</u> merchantable as a matter of law where it contains a defect by

which a vital component not only fails prematurely but, upon doing so, results in the inability of the vehicle to properly shift gears thereby preventing the vehicle from serving its most basic function, providing transportation from Point A to Point B.

*U.C.C.* § 2-314 provides that the sale of any goods includes an implied warranty that the goods are merchantable. "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 66, 783 N.Y.S.2d 698, 700-701 (N.Y.A.D. 3 Dept. 2004) (citations omitted). While this warranty "does not mean that the product will fulfill [a] buyer's every expectation," it does "provide[] for a minimal level of quality." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 662 N.E.2d 730 (N.Y. 1995). This inquiry "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 66, 783 N.Y.S.2d 698, 701 (N.Y.A.D. 3 Dept. 2004) (*quoting Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258–259, 639 N.Y.S.2d 250, 662 N.E.2d 730 (1995)).

Defendant cannot credibly argue that the Class Vehicles containing the Defect "pass in the trade without objection." The average car buyer today reasonably expects that a new car's transmission will function properly and will not fail to shift gears, result in unexpected severe speed reductions and other issues that result in the vehicle being undriveable. In fact, Plaintiff specifically pleads that she "avoids driving the Class Vehicle on the freeway because it is too dangerous." Complaint ¶ 16. Such a vehicle simply is not "fit for its intended purpose."[5]

---

[5] The cases cited by Defendant support this argument. For instance, in *Szymczak v. Nissan N. Am., Inc.*, No. 10-7493, 2011 WL 7095432 (S.D.N.Y. 2011), the Court dismissed the implied warranty claim because "plaintiffs have driven their respective vehicles without incident for several years before any radiator problem manifested itself." Here, Plaintiff alleges that she first experienced the Defect within a week of purchasing the vehicle.

Defendant further argues that there is no privity between the Plaintiff and FCA US, LLC because the vehicles in question were purchased through authorized dealers and not directly from defendant.  This argument is unpersuasive.  First, contrary to Defendant's assertions, Plaintiff is in privity with FCA US, LLC given that Defendant's dealer (from whom Plaintiff purchased her vehicles) are Defendant's "authorized agents."  That is, Plaintiff's contract with the authorized dealership and provision of the warranties by FCA US, LLC directly, places her in privity with Defendant.  *See Gordon v. Ford Motor Co.*, 657 N.YS.2d 43, 43 (N.Y. App. Div. 1997).  In fact, a brief review of the Warranty Booklet filed by Defendant in support of its motion to dismiss confirms this privity:

> *This booklet contains FCA US LLC limited warranties. It should be kept in your vehicle and presented to your Dealer if any warranty service is needed.*
>
> \*          \*          \*
>
> The warranties contained in this booklet are the only express warranties that FCA US LLC ("FCA US") makes for your vehicle. **These warranties give you specific legal rights. You may also have other rights that vary from state to state.** For example, you may have some implied warranties, depending on the state where your vehicle was sold or is registered.

*See* Exhibit "A" attached to the Declaration of Thomas A. Azar, Jr. at Pgs. 3 and 7 (Booklet pg. 4).  Accordingly, because actual privity exists between Plaintiff and Defendant, Plaintiff's implied warranty claim is well-pleaded.[6]

Even if this Court determined that there was no privity between the parties, New York Courts have recognized that under certain circumstances, a manufacturer, in addition to the seller can be liable for breach of implied warranties.  *See Hubbard v. General Motors Corp.*, No. 95-

---

[6] Moreover, to permit defendant to prevail on this argument would essentially eviscerate the implied warranty of merchantability altogether, as virtually every new car purchase today is made through an authorized dealer and not the manufacturer itself.

4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996).  In *Hubbard*, GM made a similar argument

that the plaintiff lacked vertical privity with the manufacturer.  In rejecting that argument, the

District Court confirmed that New York recognizes that "where an article is of such a character

that when used for the purpose for which it is made it is likely to be a source of danger to several

or many people if not properly designed and fashioned, *the manufacturer as well as the vendor*

is liable, for breach of law-implied warranties, to the persons whose use is contemplated."  *Id.* at

*5.  (*Citing Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 436-37 (1963) (emphasis

supplied); *see also All-Tronics, Inc. v. Ampelectric Co.*, 354 N.Y.S.2d 154, 156 (A.D. 2d Dep't

1974) ("a defect in a potentially hazardous product subjects the distributor-vendor and the

manufacturer to liability to a purchaser for breach of implied warranties")).  The purchaser of an

automobile is certainly a person whose use of the product is contemplated by the manufacturer.

*Id.*  Moreover, a vehicle equipped with a defect that disables the vehicle's drivetrain is likely to

be a source of danger when driven.  *Id.*; s*ee also Comstock v. General Motors Corp.,* 99 N.W.2d

627, 632 (Mich. 1959).

Accordingly, plaintiffs should be permitted an opportunity to establish a factual basis for

their claim for breach of the implied warranty of merchantability, and defendant's motion to

dismiss this claim should be denied.

## IV.    THE COMPLAINT ADEQUATELY SETS FORTH A CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY.

Defendant also tries to evade liability for the Defect by arguing that Plaintiff has only

alleged a *design* defect not covered under Defendant's warranties, as opposed to a defect in

*material*, *workmanship* or *factory preparation*.  Defendant's argument is unavailing for several

reasons.

First, Defendant has already admitted that the Defect is covered by it warranties on

numerous occasions.  For instance, every time that plaintiff brought her vehicle to Defendant's
authorized dealer to complain about the Defect, the attempted (and unsuccessful) repairs were
covered under Defendant's warranty:

| Repair Date | Dealer/Payee | Claim Number | Repair Odometer | List Date | Transaction Type |
|---|---|---|---|---|---|
| October 25, 2017 | 44818 - DRIVERS VILLAGE, INC.<br>181905ES - Module, Transmission Control ( | 712576 | 35,151 Miles | 2017105 | WARRANTY |
| March 21, 2017 | 44818 - DRIVERS VILLAGE, INC.<br>181905EK - Module, Transmission Control (<br>181906PR - Module, Powertrain Control (PC | 701782 | 23,244 Miles | 2017034 | WARRANTY |
| April 20, 2016 | 44818 - DRIVERS VILLAGE, INC.<br>181905D2 - Module, Transmission Control (<br>181905HT - Module, Powertrain Control (PC | 685191 | 5,175 Miles | 2016044 | WARRANTY |

*See* Cummings Decl., Ex. A at 15.  Plaintiff believes that discovery in this case will demonstrate
that Defendant routinely treats repair attempts for the Defect as covered by its warranties.

    Even more significantly, in *Granillo v. FCA US, LLC*, No. 3:16-cv-153 (D.N.J.) -- a case
involving the *same* alleged Defect in the *same* 9-Speed Transmission, involving 2014-2015 model
year Jeep vehicles -- Defendant conceded that the Defect was covered under its warranties.  One
of the primary remedies in the *Granillo* settlement was "FCA US agrees to extend the warranty on
the 9 Speed ZF 9HP Automatic Transmission component of Class Vehicles to 6 years or 100,000
miles on the odometer."  *Id*. at ECF 85-2 ("Settlement Agreement"), Section III.B.  Obviously,
Defendant (and the same defense counsel) would not tout extended warranty coverage of the
Defect as a benefit of the settlement in one case if Defendant actually did not cover repairs for the
Defect under warranty.  Such a misrepresentation to the Court would be sanctionable and raise
serious ethical issues.  Regardless, Defendant should be judicially estopped from taking a position
contrary to the position they previously took in *Granillo*.

    Second, several courts have held that there is no distinction between a design defect and a
defect in workmanship.  For example, in *Koulajian v. Trek Bicycle Corp.*, No. 90-cv-3156, 1992

WL 28884 (S.D.N.Y. Feb. 11, 1992), Defendant moved for summary judgment on the warranty

claim, arguing that the express warranty applies only to manufacturing defects, not design defects.

*Id*.  The court rejected that argument, reasoning that "the warranty's reference to 'workmanship'

could refer to [ ] design as well as implementation of those designs in the manufacturing process."

*Id*. Thus, the Court held that "[a]bsent binding authority limiting an express 'workmanship'

warranty to manufacturing defects alone, we do not find as a matter of law that such warranty

language cannot apply to design defects." *Id* at *2.

Similarly, in *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008

WL 4866604, at *14 (D. Neb. Nov. 7, 2008), the court found that "a defect related to materials

and workmanship" and a "design defect" involving the engine are substantially the same. The court

reasoned that a "design is integrated into each step of the manufacturing process and affects both

materials and workmanship," such that distinguishing a design defect from a defect in materials or

workmanship "would defy logic." *Id.* at *15. The Court concluded:

> [I]t would be absurd to interpret a car company's written warranty
> as *not* covering any defect in 'materials and workmanship' if the
> defect could simultaneously be attributable to a design implemented
> by the company in the manufacturing of the car.

*Id.* (emphasis in original); s*ee also Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th

Cir. 1989) ("[w]e believe [] that an unstrained interpretation of the exclusion for 'faulty

workmanship' includes losses caused by defects in the design and construction of a building.")[7]

Permitting Defendant to take such a position would be illogical and simply allow Defendant, and

every other product manufacturer, to link any defect to the "design" of the product, thereby

---

[7] Plaintiffs acknowledge that certain cases have held that a design defect is not covered under a
warranty limited to defects in material and/or workmanship. Respectfully, Plaintiffs believe the
reasoning in those cases is unpersuasive and would lead to warranties that would, in effect, not
cover anything.

rendering unenforceable any express warranty that covers defects in material and workmanship.

Third, even if design defects and material and/or workmanship defects are considered distinct, Plaintiffs have adequately alleged that the Defect here is a defect in material and/or workmanship and therefore covered under applicable warranties. See, e.g., Compl. ¶¶ 56, 115. These allegations are more than sufficient at the pleading stage to allege a defect in material and/or workmanship covered under the applicable warranties.

Fourth, whether or not the Defect should be covered under warranty is a question of fact that cannot be decided at the pleading stage. In fact, faced with the same argument made by another vehicle manufacturer, this Court has determined that a distinction between defects in design and materials/workmanship could not be decided on the pleadings:

> Here, plaintiff purports to allege a defect arising from faulty materials and workmanship, which may or may not have arisen from Hyundai's design, and which together may be found to fall under the category of "materials and workmanship" covered by Hyundai's limited warranty.
>
> *          *          *
>
> Whether these alleged defects arose from a faulty design, faulty materials or faulty workmanship cannot be ascertained absent discovery, since any information concerning the true origin of the alleged defect is within the sole possession of the defendant. I therefore decline to dismiss plaintiff's breach of express warranty claim at this juncture.

*Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316 (W.D.N.Y. 2013).[8]

Fifth, assuming *arguendo* that the Defect is a design defect not covered by the warranties, Defendant's limitation of its warranties to defects of material or workmanship would cause the warranty to fail of its essential purpose. A limited contractual remedy fails of its essential purpose

---

[8] S*ee also, Alin v. Am. Honda Motor Co.*, No. 08-cv-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) (same); *Cox v. Chrysler Grp., LLC*, No. 14-cv-7573, 2015 WL 5771400, at *6 (D.N.J. Sept. 30, 2015) (same).

if it fails to give the aggrieved party the benefit of their bargain. *Bristol Vill., Inc. v. Louisiana-Pac. Corp.,* 170 F. Supp. 3d 488, 508 (W.D.N.Y. 2016).  Whether the "limited warranty failed in its essential purpose is a question of fact for the jury to determine based on circumstances transpiring after the contract was formed."  *Id.* (quotations and citations omitted).  If a limited remedy fails of its essential purpose, then the aggrieved party may have any appropriate remedies available under the UCC. *See* UCC § 2-719(2).

Consumers purchasing an automobile from Defendant reasonably expect that the vehicle be free of material defects—whether of materials, workmanship or design. The purpose of Defendant's warranty is to give consumers what they paid for – if a vehicle fails, Defendant will repair it under the warranty.  If Defendant deems the Defect to be a "design defect" not covered under warranty, then consumers are left with defective automobiles and no remedy.  In that scenario, Defendant's limited warranty fails to give consumers the benefit of their bargain.  That is the exact situation that Section 2-719(2) was intended to address: "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedies of this Article." UCC 2-719 Official Comment 1.  Thus, if Defendant's written warranty can be construed as it proposes, to exclude design defects, then it fails of its essential purpose, and Plaintiffs and other Class members are entitled to their remedies under UCC 2-714 and 2-715.

## V.   PLAINTIFF PROPERLY PLEADS HER MAGNUSON-MOSS WARRANTY ACT CLAIM.

To state a claim under the Magnuson-Moss Warranty Act ("MMWA"), Plaintiff must adequately plead a cause of action for breach of express or implied warranty under state law. For this reason, claims under the MMWA "stand or fall" with "express and implied warranty claims under state law." *See, e.g.*, *Gould v. Helen of Troy Ltd.*, No. 16-2033, 2017 WL 1319810, *5

(S.D.N.Y. 2017). As discussed *supra*, Plaintiff's Complaint adequately alleges express and implied warranty claims; the Court should therefore uphold the Plaintiffs' MMWA claims.

## VI.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD PROCEED.

Defendant argues that because "Plaintiff has asserted other, overlapping causes of action, her unjust enrichment claim must be dismissed."  While not entirely clear, it appears that Defendant is arguing that Plaintiff cannot pursue an unjust enrichment claim and contract-type claims simultaneously.  Defendant is incorrect.

Although the Plaintiff is a party to the warranty agreement with FCA US, LLC and has alleged other alternative legal causes of action, a party can "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."  *Maalouf v. Salomon Smith Barney, Inc.*, No. 02-4770, 2003 WL 1858153, at *7 (S.D.N.Y. April 10, 2003) ("The fact that [the plaintiff] may only *recover* on one claim, either contract or quasi-contract, certainly does not preclude him from pleading unjust enrichment in the alternative.").[9]

In fact, FED. R. CIV. P. 8(a)(3) specifically allows a party to plead in the alternative.  If the Court agrees with Defendant's argument that Plaintiff does not have valid warranty claims, then she is entitled to try to recover through her unjust enrichment claim.  Thus, it is appropriate to plead both contractual claims and an unjust enrichment claim.

## VII.   PLAINTIFF'S CLASS ALLEGATIONS ARE PROPER.

Defendant makes the sweeping assertion that all of Plaintiff's class allegations should be

---

[9] *See also  Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 VB, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) ("Plaintiffs' alternative claims for breach of contract and for unjust enrichment can and should survive to discovery, and pursuant to Rule 8(d)(2), will not be dismissed for having been pleaded in the alternative"); *Nat'l City Commer. Capital Co., LLC v. Global Golf, Inc.*, 09-0307 2009 WL 1437620, at *1 (E.D.N.Y. May 20, 2009) (citing cases).

dismissed without any substantive discussion as to why.  While neither Plaintiff nor the Court should be required to guess what arguments are being made, it appears that Defendant is asserting that this Court lacks jurisdiction over the non-New York putative class members and therefore the class claims should be dismissed.  Such an assertion is unavailing.

First, Defendant fails to acknowledge that even assuming its legal argument was correct (it is not) that this Court does not have jurisdiction over non-New York class members, the class allegations made on behalf of the New York Subclass would still proceed.  Accordingly, at most Defendant would only be entitled to a partial dismissal of non-New York class allegations.

Second, Defendant's reliance on *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1781 (2017) in support of its jurisdictional argument is misplaced.  Courts have repeatedly distinguished class actions from a mass tort, which was at issue in *Bristol-Myers*.  For example, a little over a month ago, the Northern District of Georgia rejected this very same argument.  *Dennis v. IDT Corp.*, No. 18-2302, 2018 WL 5631102, at *2 (N.D. Ga. Oct. 18, 2018). The *Dennis* court explained that,

> [u]nlike in Bristol-Myers, due process concerns do not foreclose the exercise of personal jurisdiction over Defendants as to the claims of the unnamed non-resident plaintiffs here. The material differences between Bristol-Myers and the case before the Court today preclude its extension to federal court class actions.

Id.  The *Dennis* Court provided an in-depth explanation of its reasoning:

> First, *Bristol-Myers* involved a mass tort action, not a class action. In a mass tort action, each plaintiff is a real party in interest to the complaint (i.e., they were named as plaintiffs). In a class action, like the one before the Court today, one or more plaintiffs seek to represent a class of similarly situated plaintiffs. In contrast to a mass tort action, the class action requirements of Rule 23 ensure that the defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense and, as such, the Court perceives no unfairness in haling the defendant into court to answer to it in a forum that has specific jurisdiction over the

defendant based on the representative's claims.

Additionally, the Court is concerned about the impracticality of conducting a specific jurisdiction analysis when the contacts of each absent class member are not yet known. In mass tort actions, each plaintiff is a real party in interest to the complaint. Therefore, information regarding his or her contacts with the defendant and the forum state are easily ascertainable. In class actions, however, the litigation is generally conducted by named parties as representatives. In this case, Plaintiff has not yet moved for class certification. By limiting Plaintiff's class action to a Georgia-only class, the Court is concerned about the possibility of excluding non-resident class members who do have contacts with Defendants establishing specific jurisdiction. This would necessarily require the Court to embark on a difficult—if not impossible—inquiry not customarily performed as part of a class action and not considered in the *Bristol-Myers* decision.

Second, *Bristol-Myers* involved a state court's exercise of jurisdiction, and the decision was grounded in federalism concerns that are largely inapplicable to a nationwide class action in federal court. While the plaintiffs in *Bristol-Myers* were forum-shopping in California to reach a non-resident defendant with insufficient contacts, the case before the Court today involves Defendants that have made enough contacts to the forum states to hold them liable in a nationwide class action. Specifically, Congress enabled class actions to promote efficiency and economy in litigation. The concerns regarding a state overreaching its status as a coequal sovereign simply does not exist in a nationwide class action in federal court.

Thus, after careful consideration, the Court joins the majority of district courts who have addressed this issue in finding that *Bristol-Myers* does not prevent this Court's assertion of specific jurisdiction over Defendants with regard to the claims of the putative non-resident class members.

*Id.* at *2-3.

Like *Dennis*, most of the courts that have encountered this issue have found that *Bristol-Myers* does not apply in the federal class action context. But, more importantly, these cases universally held that in a putative class action, (1) courts are only concerned with the jurisdictional obligations of the named plaintiffs; and (2) unnamed class members are irrelevant to the question

of specific jurisdiction. *See Molock v. Whole Foods Mkt., Inc.*, No. 16-2483, 2018 WL 1342470, at *6 (D.D.C. Mar. 15, 2018) (explaining that "in a putative class action, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the named plaintiffs' are the only plaintiffs actually named in the complaint," and thus, it is only the named plaintiffs that are considered in the jurisdictional analysis); *Day v. Air Methods Corp.*, No. 17-183, 2017 WL 4781863, at *4 (E.D. Ky. Oct. 23, 2017); *Sanchez v. Launch Tech. Workforce Sols, LLC*, No. 17-1904, 2018 WL 1875615, at *1 (N.D. Ga. Jan. 26, 2018); *In re Morning Song Bird Food Litig.*, No. 12-1592, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-564, 2017 WL 4224723, at *5 (N.D. Cal. Sep. 22, 2017); *Swamy v. Title Source, Inc.*, No. 17-1175, 2017 WL 5196780, at *1 (N.D. Cal. Nov. 10, 2017); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*, No. 17-2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018); *Alvarez v. NBTY, Inc.*, No. 17-567, 2017 WL 6059159 (S.D. Cal. Dec. 6, 2017); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2074, 2017 WL 5971622, at *15 (E.D. La. Nov. 28, 2017).[10]

This Court should join the vast majority of the Courts that have evaluated this issue and hold that *Bristol-Myers* does not apply to federal class actions like this case.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss.

---

[10] *See also Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, at *8 (D.N.J. Apr. 27, 2018) ("At this stage of the litigation, no class has been certified, and therefore, to determine whether this Court has specific jurisdiction over Defendant with respect to the claims of the unnamed class members prior to class certification would put the proverbial cart before the horse.")

Dated: November 30, 2018
　　　　White Plains, New York

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

By: s/ Todd S. Garber
Todd S. Garber (519821)
D. Greg Blankinship (519819)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
tgarber@fbfglaw.com
gblankinship@fbfglaw.com

Matthew Ross Mendelsohn (*pro hac vice*)
MAZIE, SLATER, KATZ & FREEMAN LLC
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
Fax: (973) 328-0303
mmendelsohn@mskf.net

*Attorneys for Plaintiff and the Putative Classes*

{00297210 }

26