UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA CUMMINGS, individually and on behalf of all
others similarly situated,

               Plaintiff,

v.                                         5:18-CV-1072
                                         (GTS/TWD)

FCA US LLC,

               Defendant.
_____

APPEARANCES:                         OF COUNSEL:

FINKLESTEIN BLANKINSHIP FREI-PEARSON     TODD S. GARBER, ESQ.
& GARBER, LLP
  Counsel for Plaintiff
445 Hamilton Avenue, Suite 605
White Plains, New York 10601

THOMPSON COBURN LLP                 KATHY A. WISNIEWSKI, ESQ.
  Counsel for Defendant                 STEPHEN A. D'AUNOY, ESQ.
One US Bank Plaza                        THOMAS L. AZAR, Jr., ESQ.
St. Louis, Missouri 63101

COUGHLIN & GERHART LLP               ALAN J. POPE, ESQ.
  Co-Counsel for Defendant
P.O. Box 2039
99 Corporate Drive
Binghamton, New York 13902

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this breach-of-contract proposed class action filed by Lisa

Cummings ("Plaintiff") against FCA US LLC ("Defendant"), is Defendant's motion to dismiss

Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and/or 12(b)(2).  (Dkt. No.

8.)  For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Class Action Complaint

Generally, in her Class Action Complaint, Plaintiff asserts six causes of action.  (Dkt. No. 1 [Pl.'s Compl.].)  First, Plaintiff asserts, on behalf of the class, or, alternatively, the New York subclass, a violation of the Magnuson-Moss Warranty Act ("MMWA").  (*Id.* at ¶¶ 61-74.)  More specifically, Plaintiff alleges that (a) Defendant provided Plaintiff and class members with written warranties related to their purchase of the relevant vehicles, (b) Defendant breached those warranties by misrepresenting the standard, quality or grade of those vehicles, in particular a defect in the transmission, (c) Defendant failed to provide a suitable remedy to the defective transmission in the relevant vehicles, and (d) Defendant knew, should have known, or was reckless in not knowing, of its misrepresentations and omissions concerning the relevant vehicles.  (*Id.*)

Second, Plaintiff asserts, on behalf of the New York subclass, that Defendant violated N.Y. Gen. Bus. L. § 349.  (*Id.* at ¶¶ 75-84.)  More specifically, Plaintiff alleges that Defendant knowingly misrepresented and intentionally omitted material information about the safety and effectiveness of the transmission in the relevant vehicles by failing to inform members of the New York subclass that the transmission was defective and presented a safety risk.  (*Id.*)

Third, Plaintiff asserts, on behalf of the New York subclass, that Defendant violated N.Y. Gen. Bus. L. § 350.  (*Id.* at ¶¶ 85-95.)  More specifically, Plaintiff alleges that Defendant, through advertisements and other statements, made untrue and misleading representations about the transmission in the relevant vehicles that it knew or should have known were untrue and

misleading, and failed to inform the New York subclass that the transmission was defective and posed a safety risk. (*Id.*)

Fourth, Plaintiff asserts, on behalf of the New York subclass, that Defendant breached the implied warranty of merchantability. (*Id.* at ¶¶ 96-105.) More specifically, Plaintiff alleges that N.Y. U.C.C. L. §§ 2-314 and 2A-212 imposed an implied warranty that the relevant vehicles were in merchantable condition and fit for their ordinary purpose, but that the relevant vehicles were not in fact in merchantable condition and fit for their ordinary purpose due to the defect in the transmission. (*Id.*) Plaintiff alleges that Defendant was provided notice of the transmission defect within a reasonable time after the allegations of the defect became public. (*Id.*)

Fifth, Plaintiff asserts, on behalf of the New York subclass, that Defendant breached express warranties. (*Id.* at ¶¶ 106-22.) More specifically, Plaintiff alleges that (a) Defendant provided a written warranty in connection with purchase or lease of the relevant vehicles (and in fact was required to do so), (b) Defendant failed to inform the New York subclass that the vehicle was designed and manufactured in a way that posed an inherent safety risk, and (c) Defendant has failed to repair or correct the defect despite the existence of the warranty. (*Id.*)

Sixth, and last, Plaintiff asserts, on behalf of the New York subclass, that Defendant was unjustly enriched by its contract with Plaintiff and the members of the New York subclass. (*Id.* at ¶¶ 123-30.) More specifically, Plaintiff alleges that Defendant continued to market and sell the relevant vehicles despite being aware that the transmission on those vehicles was defective and posed a risk of danger to consumers and the general public, and that Defendant therefore made a profit at the expense of Plaintiff and the members of the New York subclass, who received a vehicle that was worth less than the purchase price. (*Id.*)

**B.**     **Parties' Briefing on Defendant's Motion to Dismiss**

      **1.**     **Defendant's Memorandum of Law**

Generally, in its memorandum of law, Defendant makes seven arguments. (Dkt. No. 8, Attach. 2, at 14-27 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. (*Id.* at 14-15.) More specifically, Defendant argues that Plaintiff lacks standing to bring her claims because she has not alleged an injury-in-fact in that she has not alleged that she actually had to pay to have her vehicle fixed or that her vehicle was of diminished value given that she acknowledges that there are procedures outlined to fix her vehicle, which is still under warranty, meaning she would not be required to pay for future attempts to fix her vehicle. (*Id.*)

Second, Defendant argues that Plaintiff's First Claim pursuant to the MMWA must be dismissed if the state law claims for breach of implied and express warranties are found to be legally insufficient because the MMWA does not provide an independent cause of action. (*Id.* at 15-16.)

Third, Defendant argues that Plaintiff's Second and Third Claims must be dismissed because (a) she has failed to plead facts plausibly suggesting that she suffered an injury as the result of any deceptive practice or false advertising in that she admits she did not pay for any repairs on the vehicle related to the allegedly defective transmission and that there are noted procedures for fixing the transmission in place, (b) she has not otherwise pled any injury beyond a contractual injury, which is insufficient to satisfy the requirements for these claims, (c) she has not pled allegations as to what constituted the alleged misrepresentations, the specific statements she has alleged are non-actionable puffery or opinion, statements made by Jeep representatives in

a business-oriented magazine did not constitute an advertisement or consumer-oriented communication and she has nonetheless not alleged facts plausibly suggesting those statements were false, (d) she has not pled facts plausibly alleging that she actually saw any of the alleged false advertisements or misrepresentation before she purchased her vehicle, and (e) her allegations of misrepresentative omissions based on testing conducted on the transmission are made solely on information and belief, she acknowledged that there were no technical service bulletins ("TSBs") or cited complaints as to the problem before she purchased her vehicle, and she has not pled any facts that she saw any statements that were rendered misleading by any such omission. (*Id.* at 16-22.)

Fourth, Defendant argues that Plaintiff's Fourth Claim for breach of implied warranty must be dismissed because she was not in privity with Defendant. (*Id.* at 22-23.) More specifically, Defendant argues that Plaintiff purchased her car from a third-party vendor (not Defendant). (*Id.*) Defendant also argues that Plaintiff has failed to plead facts plausibly suggesting that her vehicle was unmerchantable because she alleges that she continued to drive it a significant amount even after becoming aware of the alleged defect. (*Id.*)

Fifth, Defendant argues that Plaintiff's Fifth Claim for breach of express warranty must be dismissed because that claim is based on a design defect and the warranty covers only defects in material, workmanship, and factory preparation. (*Id.* at 24-25.)

Sixth, Defendant argues that Plaintiff's Sixth Claim for unjust enrichment must be dismissed because it is duplicative of her other causes of action. (*Id.* at 25.)

Seventh, Defendant argues that, alternatively, Plaintiff's class allegations should be dismissed because they are overbroad and legally insufficient. (*Id.* at 25-27.) More specifically,

Defendant argues that the Court lacks personal jurisdiction over a vast majority of the putative class members, arguing that (a) there is no general jurisdiction because Defendant is not incorporated in New York and New York is not its principal place of business, and (b) there is no specific jurisdiction because the class contains members from outside of New York and Plaintiff has not plead facts plausibly alleging that there is any connection between New York and those members. (*Id.*)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff makes seven arguments.[1] (Dkt. No. 23, at 11-31 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that she has sufficiently established Article III standing. (*Id.* at 11-15.) More specifically, Plaintiff argues that she suffered injury (a) by overpaying for a defective vehicle and (b) by experiencing the diminished value of her vehicle after disclosure of the defect (noting that the defect received national media attention). (*Id.*.) Plaintiff argues that the TSBs, software updates, and purported repair attempts do not defeat standing because they were all ineffective at fixing the defect. (*Id.*) Plaintiff also argues that the specific dangers posed by the defective transmission do not need to actually manifest to constitute an injury-in-fact because the injury is having been made to pay a premium price for a defective product. (*Id.*)

Second, Plaintiff argues that her claims for statutory fraud have been sufficiently pled for the following reasons: (a) Defendant had prior knowledge of the defect based on the issuance of TSBs, consumer complaints, and their knowledge of similar problems with the transmission in

---

[1]      In addition to these arguments, Plaintiff makes a request to be granted leave to amend her Complaint should the Court find that dismissal is warranted as to any part. (Dkt. No. 23, at 8 n.1 [Pl.'s Opp'n Mem. of Law].)

the 2014 and 2015 models of the relevant vehicles; (b) she has adequately pled an injury based on the premium price she paid for a defective vehicle and the fact that the attempts to fix the defect had not been effective; and (c) this injury is beyond that covered by the contractual claims because she is alleging that she overpaid for a defective product, not merely seeking damages in the amount of the purchase price.  (*Id.* at 19-20.)

Third, Plaintiff argues that her Complaint sufficiently states a claim for breach of implied warranty because (a) privity exists between Plaintiff and the third-party dealer, who Plaintiff argues is Defendant's authorized agent, and the express warranty states that Defendant is offering a warranty on the vehicle, (b) even if privity does not exist, New York law contains a privity exception to allow suits against manufacturers as well as vendors for breach of implied warranty where there is a dangerous design defect, and (c) the vehicle is unmerchantable in that the average car buyer would not expect such defects, which result in an inability to shift gears and the need to avoid driving on highways due to sudden losses of speed.  (*Id.* at 20-23.)

Fourth, Plaintiff argues that her Complaint sufficiently states a claim for breach of express warranty.  (*Id.* at 23-27.)  More specifically, Plaintiff argues that Defendant's attempt to argue that design defects are excluded from the warranty is disingenuous because (a) Defendant has already admitted that the defect is covered under warranty based on the fact that the third-party dealer serviced the transmission under the warranty, (b) Defendant previously conceded that the transmission defect was covered under warranty in a different federal lawsuit, and (c) other courts have found that there is no distinction between a design defect and a defect in workmanship.  (*Id.* at 23-24.)  Plaintiff argues that excluding design defects from the terms of the warranty would essentially have the effect of negating warranties.  (*Id.* at 25.)  Plaintiff also

argues that, even if design defects are not covered, Plaintiff has plausibly alleged a defect in material or workmanship that would be covered. (*Id.* at 25-26.) Plaintiff additionally argues that whether a defect is covered by the warranty is a question of fact that is not suitable for resolution on a motion to dismiss, and that limiting the warranty to exclude design defects would raise a question as to whether the warranty fails in its essential purpose (i.e., to protect consumers who expect a defect-free vehicle that is covered by a warranty if defects do manifest). (*Id.* at 26-27.)

Fifth, Plaintiff argues that her MMWA claim is sufficiently pled because she had adequately stated her state law warranty claims. (*Id.* at 27-28.)

Sixth, Plaintiff argues that her unjust enrichment claim should be allowed to proceed as an alternative to other claims should her contract claims fail. (*Id.* at 28.)

Seventh, Plaintiff argues that her class allegations are proper, and that, even if Defendant's argument on this point is accepted as to the national class, the claims of the New York subclass can still proceed because they all have sufficient contacts with New York. (*Id.* at 29-31.) More specifically, Plaintiff argues that *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), does not apply here because that case was in the context of mass tort litigation rather than a class action. (*Id.*)

### 3.    Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant makes three arguments. (Dkt. No. 25, at 6-14 [Def.'s Reply Mem. of Law].) First, Defendant argues that, as to the injury-in-fact requirement for the purposes of standing, Plaintiff's allegations that she paid a premium for her vehicle are conclusory and not based on any facts, noting in particular that she has not pled any facts about the resale market for her vehicle or any other facts to support her allegation that her

vehicle lost value as a result of the discovery of the defect. (*Id.* at 6-7.)

Second, Defendant argues that Plaintiff's claims must be dismissed for failure to state a claim upon which relief can be granted. (*Id.* at 7-13.)  More specifically, Defendant argues as follows: (a) Plaintiff has acknowledged that her MMWA claim cannot survive if her breach of warranty claims are dismissed; (b) as to her Second and Third Claims, (i) she admitted to purchasing her vehicle based on its reputation rather than any advertising or misrepresentation by Defendant, (ii) she has presented facts as to only a single consumer complaint about the transmission that predated her purchase of her vehicle and has not cited any authority indicating that this sufficiently pleads pre-sale knowledge by Defendant, and (iii) she has not cited any authority that her allegations of vague "testing" or "analysis" or knowledge of defect in previous models are sufficient to show knowledge of a defect in the relevant vehicles; (c) as to her claim for breach of implied warranty, (i) she has failed to include any allegations in her Complaint stating that the third-party dealership was Defendant's agent and cannot do so in good faith, (ii) New York law does not create an implied warranty against remote manufacturers and, contrary to Plaintiff's argument, courts have resoundingly rejected the "thing of danger" exception to the privity requirement, and (iii) she has not plausibly alleged the vehicle is unmerchantable because she has continued to drive the vehicle for years; (d) as to her claim of breach for express warranty, (i) Defendant has never admitted that its warranties cover design defects on the basis of repairs being conducted because repairs do not change the design of a vehicle, (ii) the extension of the warranty in a different federal lawsuit was not an admission that the warranty here covers design defects, (iii) the case law cited by Plaintiff is not applicable, (iv) Plaintiff has not pled any manufacturing defect as she now tries to allege since she argues that it was the transmissions in

all of the relevant vehicles that were defective, (v) interpretation of the warranty is a matter of law, not a matter of fact, and (vi) the doctrine of failure of the essential purpose cannot be used to provide a warranty where one does not exist; and (e) Plaintiff has not disputed that her unjust enrichment claim is duplicative of her other claims and any such argument would be contrary to the New York Court of Appeals' holdings. (*Id.*)

Third, and last, Defendant argues that Plaintiff's class allegations must be dismissed because (a) Plaintiff admitted that the Court might not have personal jurisdiction over her claims as to all out-of-state putative class members, (b) Fed. R. Civ. P. 23, as a procedural rule, cannot deprive a defendant of his substantive right to challenge personal jurisdiction, and (c) *Bristol-Myers Squibb* should be applied to this class action case because Fed. R. Civ. P. 23 does not expand a court's personal jurisdiction over defendant and cannot create jurisdiction where it would otherwise be lacking. (*Id.* at 13-14.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir.

1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all

ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v.

Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at

113).

### B.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de

novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading

standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp.2d at

212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by

requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2)

requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations

omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

_____

[2]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary

## C.     Legal Standard Governing Motions to Dismiss for Lack of Personal Jurisdiction

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, No. 04–CV1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005). "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Harris*, 2005 WL 503935, at *1 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999)). "Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, the service of a summons establishes personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *Id*. (citation omitted). "Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id*. (citation omitted).

The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant, since Defendant has served the Rule 12(b)(2) motion." *Aldinger v. Segler*, No. 04–CV–4405, 2005 WL 2591958, at *2 (S.D.N.Y. Oct. 13, 2005) (internal quotation marks and citation omitted). Unless a court conducts "a full-blown evidentiary hearing," the plaintiff only needs to make "a prima facie showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). "In other words, prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith, . . .  legally sufficient

judgment.") (internal quotation marks and citation omitted).

allegations of jurisdiction." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). "If the plaintiff fails to make the requisite showing, [the Court] may dismiss the complaint pursuant to Rule 12(b)(2)." *Id.* "When evaluating the parties' submissions, the Court will read the Complaint and submissions in the light most favorable to Plaintiff." *Daou v. Early Advantage, LLC*, 410 F. Supp. 2d 82, 88–89 (N.D.N.Y.2006) (Scullin, J.) (citations omitted).

**D.    Legal Standard Governing Motions to Amend a Complaint**

Motions for leave to amend a complaint are governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Nevertheless, leave to amend a complaint is not automatic; and a court may deny a motion for leave to amend where there is an apparent or declared reason not to grant leave to amend, "such as (1) undue delay, bad faith or dilatory motive on the part of the movant, (2) repeated failure to cure deficiencies by amendments previously allowed, (3) undue prejudice to the opposing party by virtue of the allowance of the amendment, (4) futility of amendment, etc." *Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979).

Finally, in this District, a motion for leave to amend a pleading must (1) attach an unsigned copy of the proposed amended pleading, and (2) set forth specifically the proposed amendments, and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means. N.D.N.Y. L.R. 7.1(a)(4).

## III.     ANALYSIS

### A.     Whether Plaintiff Possesses Article III Standing to Bring Suit

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 23, at 11-15 [Pl.'s Opp'n

Mem. of Law].)  To those reasons, the Court adds the following analysis.

To show Article III standing, the plaintiff "must have suffered an injury in fact (1) that is

concrete and particularized, (2) that is causally linked to the defendant's challenged conduct, and

(3) that is likely to be redressed by a favorable decision."  *Dubuisson v. Stonebridge Life Ins. Co.*,

887 F.3d 567, 573 (2d Cir. 2018).  "To establish an injury in fact, a plaintiff need only show that

he or she suffered an invasion of a legally protected interest that is concrete and particularized."

*Dubuisson*, 887 F.3d at 574 (citing *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 [2016]).  "For

an injury to be particularized, it must affect the plaintiff in a personal and individual way, and an

injury is concrete if it is 'real and not abstract,' although injury need not be tangible to be

concrete."  *Dubuisson*, 887 F.3d at 574 (citing *Spokeo*, 136 S.Ct. at 1548).  The fact that a suit is

brought as a class action does not change this analysis; as the Supreme Court has stated, "even

named plaintiffs who represent a class 'must allege and show that they personally have been

injured, not that the injury has been suffered by other, unidentified members of the class to which

they belong and which they purport to represent.'"  *Simon v. E. Ky. Welfare Rights Org.*, 426

U.S. 26, 40 n.20 (1976).

The Second Circuit recently noted that "overpaying for a product results in a financial

loss constituting a particularized and concrete injury in fact."  *John v. Whole Foods Mkt. Grp.,*

*Inc.*, 858 F.3d 732, 736 (2d Cir. 2017); *see also Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170,

177 (E.D.N.Y. 2018) ("A plaintiff's allegation that she purchased products bearing misleading labels and sustained financial injury as a result is sufficient to give that plaintiff Article III standing."); *Kacocha v. Nestlé Purina Petcare Co.*, 15-CV-5489, 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016) (finding that the plaintiff alleged an adequate injury for the purpose of Article III standing where he alleged that he paid a premium price for a product that he would not have had he known the truth about the product's low quantity of real bacon).

In this case, Plaintiff alleges that she experienced issues as the result of the vehicle's allegedly defective transmission (including unexpected acceleration or deceleration and unreliable gear shifting) for which she sought service from an "FCA authorized dealer" multiple times including in January or February 2016, and on April 20, 2016, July 1, 2016, March 20, 2017, March 24, 2017, October 25, 2017, November 8, 2017, and January 11, 2018. (Dkt. No. 1, at ¶¶ 16-17, 19 [Pl.'s Compl.].) Plaintiff also alleges that Defendant issued multiple TSBs on December 5, 2015, August 2016, February 21, 2017, and April 4, 2017, that variously related to defects in the transmission of Jeep Cherokee vehicles with model years of 2013, 2014, 2015, and 2016, with the three most recent TSBs specifically covering the 2016 model (the model owned by Plaintiff). (*Id*. at ¶¶ 39-44.) Plaintiff also alleges that "[t]he TSB and software updates did not repair the Defect." (*Id*. at ¶ 45.) Additionally, as a general matter and as part of her claims under N.Y. Gen. Bus. L. §§ 349 and 350, Plaintiff alleges that Defendant's actions caused her to suffer injury in that she and others "paid a price premium for the Class Vehicles" and that "they would not have purchased or leased [the vehicles] or would have paid less for them" had they known that the transmissions were defective. (*Id*. at ¶¶ 49, 83.)

Based on the above, the Court finds that Plaintiff has sufficiently pled that she has

suffered an injury-in-fact and thus that she has Article III standing. Specifically, she alleged that (a) she overpaid for a defective product due to Defendant's misrepresentations, (b) despite the fact that TSBs were issued as to the defect, the TSBs did not repair the defect, and (c) she attempted to have the defect repaired but Defendant's authorized dealer had not been successful (i.e., the remedy provided by Defendant was inadequate). The Court notes that, regardless of whether the TSBs were issued before or after Plaintiff purchased her Class Vehicle, they would not constitute an impediment to a finding of standing because Article III standing is not based on a determination of the merits of any of Plaintiff's substantive claims; Plaintiff therefore need not show that Defendant had notice of the defect or that any provided fix for the defect was unsuccessful in order to show standing. *See Dubuisson*, 887 F.3d at 574 (noting that, although a plaintiff must clearly allege facts sufficient to constitute and injury-in-fact, "those allegations 'need not be capable of sustaining a valid cause of action'"). Consequently, because Plaintiff alleged economic injury as a result of Defendant's conduct that could be redressed by a favorable decision, the Court finds that she has Article III standing to bring this action.

> **B.      Whether Plaintiff's Claims for Deceptive Practices and False Advertising Must Be Dismissed**

After careful consideration, the Court answers this question in the negative as to Plaintiff's claims as far as they are based on affirmative representations, but in the affirmative as to her claims as far as they are based on omissions for the reasons stated in Defendant's memoranda of law. *See, supra,* Part I.B. of this Decision and Order. To these reasons, the Court adds the following analysis.

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any services in

this state," while N.Y. Gen. Bus. L. § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. §§ 349 and 350. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 [2012]). "[T]he New York Court of Appeals has instructed that a deceptive act or practice has an 'objective definition,' whereby deceptive acts or practices–which may be acts or omissions–are 'limited to those likely to mislead a reasonable consumer acting under the circumstances.'" *New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 229 (S.D.N.Y. 2015) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24 [2000]). "In other words, a violation of this section 'requires that the defendant's conduct deceive a reasonable consumer in a material respect, work a harm to the public at large, and directly cause the plaintiff's injury." *New World Solutions, Inc.*, 150 F. Supp. 3d at 330. Reliance is not required for a claim under N.Y. Gen. Bus. L. § 349, although the plaintiff must show that the materially deceptive act caused the injury. *Stutman*, 95 N.Y.2d at 29. Reliance is, however, required for a claim under N.Y. Gen. Bus. L. § 350; in particular, reliance on the alleged statements or advertisement at the time of the purchase. *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 446, 447 (N.Y. App. Div. 2d Dept. 2004).

### 1. Affirmative Representations as Materially Misleading Conduct

As an initial matter, the Court notes that, although Defendant raised this issue clearly in their memorandum of law, Plaintiff did not offer any argument in response to it; in fact,

Plaintiff's argument focuses entirely on the alleged material omissions rather than any of the alleged representations. (Dkt. No. 23, at 15-20 [Pl.'s Opp'n Mem. of Law].) In this District, "when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a 'modest' burden." *Yennard v. BOCES*, 353 F. Supp. 3d 194, 205 (N.D.N.Y. 2019) (Suddaby, C.J.). However, the Court finds that Plaintiff has nonetheless pled facts sufficient to plausibly suggest (albeit barely) claims under these sections related to the alleged affirmative misrepresentations.

In her Complaint, Plaintiff alleges the following facts: (a) she purchased the Class Vehicle "because of its reputation for safety and reliability, consistent with her exposure to marketing materials for the Class Vehicle"; (b) she purchased the Class Vehicle in part because of the Limited Warranties Defendant represented the vehicle came with; (c) she believed the Class Vehicle was safe and reliable based on her test drive, review of the features and options available, and Defendant's "representations regarding the Class Vehicle"; (d) a statement in American Machinist magazine that the 9-speed transmission was "a critical part of their strategy to meet fuel economy requirements"; (e) promises in a press kit that the 9-speed transmission would deliver "numerous benefits customers will appreciate, including aggressive launches, smooth power delivery at highway speeds and improved fuel efficiency"; (f) Defendant's Chief Executive Officer stated in Automotive News that the 2016 Jeep Cherokee would not have transmission problems; and (g) in its advertising, Defendant represented that the Class Vehicle was "more fuel efficient while delivering the power drivers appreciate on the road." (Dkt. No. 1, at ¶¶ 11-13, 29, 34-35, 37 [Pl.'s Compl.].)

As an initial matter, the Court agrees with Defendant that any representation that the Class Vehicle was covered under the terms of the Limited Warranty does not suffice for her claims because she specifically alleges that Defendant did in fact provide her with this warranty. (Dkt. No. 1, at ¶ 37 [Pl.'s Compl.].)  The fact that the Limited Warranty might not cover everything that could go wrong with the car does not make the representation that a warranty of the stated terms was being provided false.

In order for any of these other representations to have caused Plaintiff's injury, she must have alleged facts plausibly suggesting that she actually saw or heard any of these statements before she purchased the Class Vehicle.  *See Gale*, 781 N.Y.S.2d at 47 (finding failure to plead a claim under Section 349 where, although the plaintiff pled facts as to particular misleading statements, he did not state that he saw any statements before purchasing the relevant item, noting that, without seeing the statements, they could not have been the cause of his injury); *see also Stoltz v. Fage Dairy Proccessing Ind., S.A.*, 14-CV-3826, 2015 WL 5579872, at *22 ("In the context of claims involving consumable goods, 'to properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products purchased."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("Of course, if Plaintiff did not see the website and Facebook page beforehand, he could not have been injured by them.").

As noted above, Plaintiff variously alleges facts related to statements made by Defendant's representatives, in advertisements and in a press kit.  The only factual allegations that clearly relate to factors that Plaintiff was aware of before her purchase was her knowledge of "its reputation for safety and reliability, consistent with her exposure to marketing materials for

the Class Vehicle," her review of the features and options available, and Defendant's "representations regarding the Class Vehicle." (Dkt. No. 1, at ¶¶ 11, 13 [Pl.'s Compl.].) It is not clear from her vague references to "marketing materials" and "representations regarding the Class Vehicle" whether Plaintiff had seen none, some, or all of the more specifically discussed representations included later in her Complaint. *See Gale*, 781 N.Y.S.2d at 47.

Plaintiff has, however, additionally alleged (in relation specifically to Defendant's CEO's statement that the 2016 Jeep Cherokee would not have transmission problems[3] and an advertisement that stated that the transmission made the Class Vehicle "more fuel efficient while delivering the power drivers appreciate on the road") that she and other putative class members purchased the Class Vehicle based in part on these representations. (Dkt. No. 1, at ¶ 35 [Pl.'s Compl.].) This statement more plausibly suggests that Plaintiff saw at least these particular statements before purchasing the Class Vehicle. *See Golemberg*, 8 F. Supp. 3d at 480 (finding that it was reasonable to draw an inference that plaintiff has seen statements on the defendant's website and Facebook account where he [a] described misleading statements and advertising, and [b] alleged that the representations "as described herein" had already deceived and misled him). Therefore, drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has alleged facts plausibly suggesting that she saw at least some of the allegedly false misrepresentations before she purchased the Class Vehicle. *See Cadwallader v. Devlin*, 155 F. Supp. 3d 175, 184 (N.D.N.Y. 2016) (McAvoy, J.) (noting that, when deciding a motion to

---

[3] The Court declines to decide on this motion whether Automotive News (the publication in which this statement was published) is a consumer-oriented publication because this is a factual issue not suited to resolution at this stage based on the allegations currently available. (Dkt. No. 8, Attach. 2, at 19 n.11 [Def.'s Mem. of Law].)

dismiss, the Court must draw all reasonable inferences in the non-moving party's favor).  The question of whether these representations were ones that might deceive a reasonable consumer is a question of fact better left for decision on a developed record.  *See Kacocha*, 2016 WL 4367991, at *14 (collecting cases).

 As to Defendant's arguments about injury, this Court has recognized that "'a plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement,'" provided that the defendant has not provided an adequate remedy for the alleged problem.  *Kommer v. Ford Motor Co.*, 17-CV-0296, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) (Kahn. J.) (quoting *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 453 [E.D.N.Y. 2012]; citing *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 678 [S.D.N.Y. 2012]).  Plaintiff has adequately pled at this stage that (a) she paid a premium price for the Class Vehicle in light of the defect that was unknown to her at the time of purchase, (b) she would not have paid as much for the Class Vehicle had she known of the defect, and (c) she had attempted to get the defect repaired but that the fixes made by the third-party dealership did not remedy the issue.  (Dkt. No. 1, at ¶¶ 45, 48, 83 [Pl.'s Coml.].)  Plaintiff has therefore sufficiently pled an injury for her claims to survive at this stage.  *See Kacocha*, 2016 WL 4367991, at *14 (collecting cases); *cf. Kommer,* 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) (Kahn. J.) (noting that "[i]f Ford was unable to fix the defect, then Kommer may have suffered a cognizable injury under N.Y. [Gen. Bus. L. §§] 349 and 350").

The Court therefore finds that Plaintiff has alleged facts plausibly suggesting claims pursuant to N.Y. Gen. Bus. L. §§ 349 and 350 based on affirmative representations.  Defendant's motion on this issue must be denied.

## 2.      Omissions as Materially Misleading Conduct

In her Complaint, Plaintiff alleges the following facts: (a) Defendant knew but failed to disclose the transmission defect and its attendant safety risks at the time she purchased the Class Vehicle; and (b) Defendant failed to disclose the defect in its advertisements.  (Dkt. No. 1, at ¶¶ 15, 35, 81 [Pl.'s Compl.].)  Consequently, the basis for Plaintiff's claims related to omissions involve Defendant's alleged failure to inform consumers that the 9-speed transmission was defective.  Defendant argues that Plaintiff has not stated claims based on this omission because (a) she has not alleged facts plausibly suggesting that Defendant was aware of the defect at the time Plaintiff purchased the Class Vehicle, and (b) has not alleged that this omission rendered any other statements made by Defendant misleading.  (Dkt. No. 8, Attach. 2, at 20-22 [Def.'s Mem. of Law].)  Defendant also argues in its reply brief that Plaintiff has not alleged an injury in response to her submission of extrinsic evidence related to her claims that she paid a premium price for her defective vehicle.  (Dkt. No. 24, at 8 [Def.'s Reply Mem. of Law].)

To state an omission claim, Plaintiff must allege facts plausibly suggesting that (a) Defendant alone possessed material information about the defect, and (2) Defendant failed to provide that information to her and other consumers.  *Kommer*, 2017 WL 3251598, at *4.

As to whether Defendant knew of the defect, Plaintiff alleges facts as to various TSBs in the Complaint.  (Dkt. No. 1, at ¶¶ 39-44 [Pl.'s Compl.].)  As Defendant argues, only one of these TSBs was issued before Plaintiff purchased the Class Vehicle: TSB 08-120-15, which covered 2014 to 2016 model year Jeep Cherokees and "informed dealers of the procedure to follow in the event customers "described that the instrument cluster 4WD indicator lamp was illuminated

and/or that there was an intermittent no start condition."[4]  (*Id.* at ¶ 40 [alterations omitted].)

However, Plaintiff has not alleged that she has experienced the problems this TSB addresses

(e.g., an illuminated 4WD indicator lamp and/or an intermittent no start condition); rather, she

alleges only sudden acceleration or deceleration and unreliable gear shifting.  (*Id.* at ¶ 16-17.)

She therefore has not alleged facts plausibly suggesting that Defendant knew or should have

knew about the transmission problem she experienced at the time she purchased the Class

Vehicle as a result of this TSB.

Plaintiff argues that a TSB issued in March 2016, just a few months after she purchased

the Class Vehicle, suffices to plausibly suggest notice.  (Dkt. No. 23, at 17-18 [Pl.'s Opp'n Mem.

of Law].)  In the Complaint, Plaintiff alleges that TSB 21-013-16 was issued on March 25, 2016

(and later revised by TSB SB-21-013-16 on August 31, 2016), and that TSB SB-21-013-16

discussed the procedure if a customer "indicated that their transmission shift quality may be

erratic."  (Dkt. No. 1, at ¶ 42 [Pl.'s Compl.].)  Even if a TSB from two months after purchase can

be considered as plausibly suggesting knowledge of a problem before purchase, Plaintiff has not

alleged what the content of TSB 21-014-16 actually was.  Citing to the content of the revised

TSB from August 2016 (approximately eight months after she purchased her vehicle) does not

provide any indication of whether and to what extent the original TSB from March 2016

addressed the relevant transmission problems.  Even drawing all reasonable inferences in

Plaintiff's favor, the Court cannot say that citation to the content of the revised TSB plausibly

suggests that Defendant should be charged with knowledge of the alleged defect at the time

---

[4]  Plaintiff attached a copy of this TSB to her opposition memorandum of law.  (Dkt. No. 23, Attach. 5, at 2-8.)  The Court finds that it may consider this extrinsic evidence because it is both incorporated by reference in Plaintiff's Complaint and integral to the Complaint.

Plaintiff purchased the Class Vehicle.

In addition, Plaintiff lists a number of complaints filed with either the National Highway Traffic Safety Administration ("NHTSA") or on other websites by consumers; but, as Defendant argues, these complaints are dated after when Plaintiff purchased the Class Vehicle in January 2016. (Dkt. No. 1, at ¶ 38 [detailing complaints from March 6, 2016, June 29, 2016, September 8, 2016, September 28, 2016, August 1, 2017, October 4, 2017, December 9, 2017, December 12, 2017, February 13, 2018, March 15, 2018, March 17, 2018, and March 26, 2018].) Plaintiff cites a complaint filed with the NHTSA from December 14, 2015, that she filed as an attachment to her opposition memorandum of law; but such extrinsic evidence cannot be considered as part of this motion to dismiss[5] and there is no basis to convert Defendant's motion to a motion for summary judgment at this point. *See Walker v. Bellnier*, 17-CV-1008, 2019 WL 1305825, at *2 (N.D.N.Y. Mar. 22, 2019) (Suddaby, C.J.) (finding plaintiff was not entitled to have the motion to dismiss converted to a motion for summary judgment where no discovery had yet occurred and the Court was "not persuaded that the exhibits presented by the non-movant constitute[d] and adequate record upon which to grant summary judgment"). Because Plaintiff has therefore failed to allege that any complaints were made before she purchased the Class Vehicle, those complaints do not support her argument that she has pled that Defendant had knowledge of the defect at the relevant time.

As to the alleged pre-production testing and pre-and post-production design failure mode

---

[5]    The Court finds that this complaint was neither incorporated by reference in nor integral to Plaintiff's Complaint.  Moreover, because Plaintiff is not proceeding *pro se*, she may not effectively amend her Complaint through factual assertions in or attachments to her response to Defendant's motion to dismiss.

analysis, Plaintiff does not allege any facts plausibly suggesting that this testing in fact showed any sort of defect in the transmission in the Class Vehicle or any occurrence of the problems Plaintiff has alleged she and others have experienced. (Dkt. No. 1, at ¶ 32 [Pl.'s Compl.].) Although Plaintiff is certainly not required to present evidence related to this testing at this stage, she must make more than generalized allegations to plausibly suggest that the testing actually supports her claims; the mere existence of testing, without any allegations as to what that testing revealed, does not plausibly suggest that Defendant was aware of the alleged defect. *Iqbal*, 129 S. Ct. at 1949.

Lastly, as to Plaintiff's argument that her general allegations that Defendant was aware of a defect in the 9-speed transmission used in the 2014 and 2015 year models of the Jeep Cherokee are sufficient to plausibly suggest it should have known that defect persisted in the 2016 year model, the Court finds this argument unpersuasive. In her Complaint, Plaintiff alleges the following: (a) Defendant has "designed, manufactured, marketed, distributed, sold, and leased vehicles with the 9-Speed Transmission" since 2013; (b) the 9-speed transmission was "plagued with problems from the start;" and (c) Defendant's CEO stated that "problems with the 9-Speed Transmission had been remedied and that the 2016 Jeep Cherokee would not have transmission problems." (Dkt. No. 1, at ¶¶ 28, 30, 34 [Pl.'s Compl.].) However, none of these allegations state any facts about the nature of the transmission defect that Plaintiff appears to allege was present in earlier models using the 9-speed transmission or the problems that it produced in those earlier models. Additionally, her citation to the CEO's statement that previous problems with the 9-speed transmission had been "remedied" in the 2016 year model appear to actually suggest that the 9-speed transmission in the 2016 year model was not entirely the same version of the 9-speed

transmission that had been present in earlier models. Given that Plaintiff has not alleged any

facts plausibly suggesting that the earlier models experienced the same problems as did the

relevant 2016 model, or that the 9-speed transmission had not been changed in any way from

those earlier models, Plaintiff has not plausibly suggested that knowledge of any defect in earlier

models presupposes knowledge of the defect in the 2016 year model specifically.

For all of the above reasons, Plaintiff has not plausibly suggested that Defendant had

knowledge of the defect before she purchased the Class Vehicle and therefore, to the extent her

claims pursuant to N.Y. Gen. Bus. L. §§ 349 and 350 are based on the relevant omission, they

must be dismissed.

### C. Whether Plaintiff's Claim for Breach of Implied Warranty Must Be Dismissed

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memoranda of law. (Dkt. No. 8, Attach. 2, at 22-23 [Def.'s Mem.

of Law]; Dkt. No. 25, at 9-10 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the

following analysis.

Section 2-314 of the Uniform Commercial Code (which has been adopted by New York)

states that "a warranty that the goods shall be merchantable is implied in a contract for their sale

if the seller is a merchant with respect to goods of that kind," and must be, in relevant part, "fit

for the ordinary purposes for which such goods are used." N.Y. U.C.C. § 2-314. "To establish

that a product is defective for the purposes of a breach of implied warranty of merchantability

claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an

inquiry that focuses on the expectations for the performance of the product when used in the

customary, usual and reasonably foreseeable manners." *Wojcik v. Empire Forklift, Inc.*, 783

N.Y.S.2d 698, 701 (N.Y. App. Div. 3rd Dept. 2004).

"New York law allows claims of implied warranty to be brought only by those in privity with the named defendant." *Jackson v. Eddy's LI RV Center, Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012) (citing *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 248 [2d Cir. 1986]). Consequently, unless Plaintiff has sufficiently alleged that privity existed between her and Defendant, her claim for breach of implied warranty must be dismissed. *See Cali v. Chrysler Grp. LLC*, 10-CV-7606, 2011 WL 383952, at *3 (S.D.N.Y. Jan. 18, 2011) ("Plaintiff's breach of implied warranty claim also fails for the independent reason that New York law requires privity for implied warranty claims."); *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 190 (N.D.N.Y. 2009) (Suddaby, J.) (finding that plaintiffs claim for breach of implied warranty of merchantability would be barred where there was no allegation or evidence of privity between those plaintiffs and the defendant); *Mendelson v. Gen. Motors Corp.*, 105 Misc.2d 346, 347 (N.Y. Sup. Ct. Nassau Cnty. 1980) (finding no breach of implied warranty against car manufacturer due to lack of privity in a suit related to a defective transmission resulting in transmission slips, loss of gears, and failure to properly shift into gears).

Plaintiff's Complaint does not contain any such plausible allegations of privity. Specifically, Plaintiff alleges that, in January 2016, she purchased the relevant vehicle from "an FCA authorized dealer, Fuccillo, in Adams, New York." (Dkt. No. 1, at ¶ 10 [Pl.'s Compl.].) She therefore admits in the Complaint that she did not purchase the vehicle directly from Defendant, but rather through a third-party dealer. In this respect, Plaintiff argues that the third-party dealer was Defendant's "authorized agent" and therefore "Plaintiff's contract with the authorized dealership and provision of warranties by [Defendant] directly, places her in privity

with Defendant." (Dkt. No. 23, at 22 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff offers no factual allegations plausibly suggesting that the specific dealership from which she purchased her vehicle was Defendant's agent; rather, she simply alleges that it was an "authorized dealer." (Dkt. No. 1, at ¶ 10 [Pl.'s Compl.].) At least one New York court has explicitly indicated that an authorized dealer is not the same as an agent under New York law. *See L.S. & Sons Farms, LLC v. Agway, Inc.*, 837 N.Y.S.2d 448, 449 (N.Y. App. Div. 4th Dept. 2007) (finding that the lower court erred in denying the defendant's summary judgment motion because that defendant "met its initial burden by establishing that it had no contract with plaintiff and that Seedway was only its authorized dealer and was not its agent"). The case that Plaintiff relies on in support of her argument does not contradict this. *See Gordon v. Ford Motor Co.*, 657 N.Y.S.2d 43, 43 (N.Y. App. Div. 1st Dept. 1997) (noting only that privity would exist if the dealerships from which the plaintiffs purchased or leased their vehicles were "defendant's sales or leasing agents"). Because Plaintiff has not pled any facts plausibly suggesting that the third-party dealer was in fact Defendant's agent, the third-party dealer's relationship with Defendant does not provide a basis for finding privity between Plaintiff and Defendant.

Nor is the Court convinced that any express warranties provided by Defendant create privity for the purposes of a claim for breach of implied warranty. In particular, Plaintiff cites to a paragraph in the warranty booklet filed by Defendant[6] which states that (a) Defendant is providing limited warranties, (b) the dealer shall perform any needed warranty service, (c) the booklet encompassed the only express warranties made by Defendant, and (d) the purchaser

---

[6] The Court finds that it is permitted to consider this warranty booklet on this motion to dismiss because the Complaint references this warranty.

"may have some implied warranties, depending on the state where your vehicle was sold or is registered." (Dkt. No. 23, at 22 [Pl.'s Opp'n Mem. of Law].) Plaintiff has cited no legal authority for her contention that a manufacturer's provision of a limited warranty on a new vehicle automatically creates privity between the manufacturer and a purchaser who obtained the vehicle from a third-party dealer. *See Jackson*, 845 F. Supp. 2d at 530 ("While claims made pursuant to written warranties do not require a showing of privity of contract, New York law allows claims of implied warranty to be brought only by those in privity with the named defendant."); *Leonard v. Tollycraft Corp.*, 88-CV-5809, 1989 WL 1128247, at *5 n.4 (S.D.N.Y. Oct. 19, 1989) (finding that a New York trial court case that found that the "mere issuance of an express warranty by a manufacturer creates privity for all purposes [including for a claim for breach of implied warranty] with any recipient of that warranty" was "inconsistent with the weight of the law in New York"). Rather, New York law does not automatically create an implied warranty against a remote manufacturer. *See Pronti v. DML of Elmira, Inc.*, 478 N.Y.S.2d 156, 157 (N.Y. App. Div. 3rd Dept. 1984) ("There is no implied warranty of merchantability from a manufacturer to a remote purchaser not in privity with that manufacturer where only property damage, and not personal injury, is alleged.").

Because the Court finds that Plaintiff has not alleged facts plausibly suggesting privity between Plaintiff and Defendant, the only way in which Plaintiff's claim for breach of implied warranty can proceed is if she meets an exception to the requirement for privity. The Court finds that she does not meet any such exception for the following three reasons.

First, Plaintiff argues that privity is not required because New York recognizes a "thing of danger" exception, relying on *Hubbard v. Gen. Motors Corp.*, 95-CV-4362, 1996 WL 274018

(S.D.N.Y. May 22, 1996). (Dkt. No. 23, at 22-23 [Pl.'s Opp'n Mem. of Law].) However, courts within the Second Circuit have more recently questioned whether *Hubbard* is an accurate interpretation of New York law. *See Mahoney v. Endo Health Solutions, Inc.*, 15-CV-9841, 2016 WL 3951185, at *5 (S.D.N.Y. July 20, 2016) (noting that no thing-of-danger exception has appeared in any recent New York cases, which have "overwhelmingly upheld the privity requirement where only economic loss is alleged in cases that involve indisputably dangerous products"); *Feliciano v. Gen. Motors LLC*, 14-CV-6374, 2016 WL 9344120, at *6 (S.D.N.Y. Mar. 31, 2016) (noting that New York law recognizes a "personal injury exception to the privity requirement" but that, because the plaintiff sought recovery only for economic loss related to the value of their vehicle and breach of contract, they were not entitled to that exception and therefore were required to prove privity, and specifically rejecting the "thing of danger" exception because courts dispute whether it is an accurate reflection of New York law); *Dixon v. Ford Motor Co.*, 14-CV-6135, 2015 WL 6437612, at *4-5 (S.D.N.Y. Sept. 30, 2015) (rejecting the thing-of-danger exception as being an unpersuasive interpretation of New York law, noting in particular that [a] New York courts have not subsequently adopted such an exception, [b] New York courts have distinguished the case relied on by *Hubbard* as being one based in personal injury rather than implied warranty, and [c] New York courts have rejected economic loss breach of implied warranty claims for lack of privity even where the product at issue was clearly dangerous); *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316-17 (W.D.N.Y. 2013) (noting that case law supporting the existence of a thing-of-danger exception "has been inconsistently applied"); *cf. Hingos v. W.L. Gore & Assoc.*, 16-CV-0969, 2017 WL 3309095, at *7 (N.D.N.Y. Jan. 27, 2017) (Mordue, J.) (noting the thing-of-danger standard in conjunction with a breach of

implied warranty claim, but noting specifically that the standard applied in "cases of personal injury").[7]

After reviewing the case law, the Court is not convinced that New York law contains a thing-of-danger exception to the privity requirement. *Hubbard* relied solely on *Goldberg v. Kollsman Instr. Corp.*, 12 N.Y.2d 432, 436 (N.Y. 1963), and *All-Tronics, Inc. v. Ampelectric Co.*, 354 N.Y.S.2d 154, 156 (N.Y. App. Div. 2d Dept. 1974), in making its finding; yet these cases do not convincingly suggest that the thing of danger exception (if it still exists at all) applies to claims for breach of the implied warranty of merchantability where the only alleged injury is economic, given that they involved either bodily harm/death or property damage rather than pure economic loss. *Goldberg*, 12 N.Y.2d at 436; *All-Tronics, Inc.*, 354 N.Y.S.2d at 156. Additionally, *Goldberg*, which was decided before strict products liability was a well-recognized tort claim under New York law, seems to suggest that the thing-of-danger exception it establishes is more appropriately related to the context of strict products liability than the traditional implied warranty. *See Goldberg*, 12 N.Y.2d at 436 (noting that the thing-of-danger concept had long been applied in tort cases for negligence and citing with approval a decision of the California Supreme Court, which, "in a unanimous opinion imposed 'strict tort liability' [*surely a more accurate phrase*] regardless of privity on a manufacturer") (emphasis added).

Such stretching of the bounds of the implied warranty cause of action is no longer

_____

[7] The Court notes that it has previously applied the thing-of-danger exception in denying summary judgment on an implied warranty claim. *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191-92 (N.D.N.Y. 2009) (Suddaby, C.J.). However, the discussion of the issue in that case was limited to noting the standard from *Hubbard* without assessing the validity of *Hubbard*'s interpretation of New York law. As can be seen from the more recent case law discussed here, the assumption of *Hubbard*'s validity that the Court relied on in *Wade* has since been placed under greater scrutiny.

necessary now that New York recognizes strict products liability as a separate and distinct cause of action from a breach of implied warranty. *See Denny v. Ford Motor Corp.*, 87 N.Y.2d 248, 255-56 (N.Y. 1995) (noting that, in the attempt to cope with the changing economic landscape of mass-produced products in an impersonal marketplace, courts faced difficulty with the rigid requirement of privity for breach of implied warranty claims and therefore created certain narrow exceptions to that requirement before ultimately shifting their focus to the "new, more flexible tort cause of action," strict products liability, and finding that breach of warranty and strict products liability remain separate and distinct causes of action, citing in particular to the adoption, retention, and expansion of the U.C.C. in New York as to breach of implied warranty); *Mendelson*, 105 Misc. 2d at 348 (noting that [a] the UCC removes the privity bar only where the plaintiff is "injured in person," [b] that, while court could conceivably abolish privity in cases seeking recovery for direct economic loss, courts in New York have not done so, and [c] there is a difference between causes of action under a theory of breach of implied warranty and a theory of strict products liability); *see also Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 416-17 (N.D.N.Y. 2012) (D'Agostino, J.) (recognizing that claims of breach of implied warranty and strict products liability, while similar, are distinct under New York law).

The Court is particularly mindful of the fact that *Hubbard* did not cite or acknowledge the New York Court of Appeal's decision in *Denny* or consider the change in the legal landscape since *Goldberg* was decided in 1963. As other Courts rejecting *Hubbard*'s interpretation have noted, New York courts after *Goldberg* have routinely required a showing of privity for claims under a theory of breach of implied warranty where only economic injury was claimed, including in cases involving allegations of defective vehicles and other potentially dangerous goods. *See*

*Adirondack Combustion Tech., Inc. v. Unicontrol, Inc.*, 793 N.Y.S.2d 576, 579 (N.Y. App. Div. 3rd Dept. 2005) ("A claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries."); *Miller v. Gen. Motors Corp.*, 471 N.Y.S. 2d 280, 282 (N.Y. App. Div. 1st Dept. 1984) (noting that, although privity may not be required in suits for negligence or strict products liability, in a suit to recover for economic loss, "it has consistently been held that a cause of action does not lie against a remote manufacturer for the breach of an implied warranty"); *Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*, 453 N.Y.S.2d 501, 502 (N.Y. App. Div. 4th Dept. 1982) ("[B]ecause it sustained economic loss only, plaintiff, who is not in privity with Fiat, may not recover on a claim of breach of implied warranty."); *Hole v. Gen. Motors Corp.*, 442 N.Y.S.2d 638, 640 (N.Y. App. Div. 3rd Dept. 1981) (interpreting the U.C.C. as not permitting a plaintiff who is not in privity to recover upon the breach of an implied warranty of merchantability unless the claim of the purchaser is for personal injuries). Consequently, the Court agrees with the other courts that have rejected *Hubbard*'s interpretation in concluding that no thing-of-danger exception exists under New York law for claims involving purely economic injury.

Second, to the extent that Plaintiff relies an exception to the privity requirement based on being a third-party beneficiary of the contract between Defendant and its authorized dealer, Plaintiff has failed to allege facts plausibly suggesting the applicability of such exception here because she has not included any factual allegations regarding the contract between Defendant and the authorized dealer, much less any factual allegations plausibly suggesting that the contract was intended to provide a sufficiently immediate benefit to her. *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016) ("Under New York law, a plaintiff claiming

rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and binding

contract between other parties, (2) that the contract was intended for his benefit, and (3) that the

benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the

contracting parties of a duty to compensate him if the benefit is lost."); *Dixon v. Ford Motor Co.*,

14-CV-6135, 2015 WL 6437612, at *4-5 (S.D.N.Y. Sept. 30, 2015) (finding plaintiff failed to

plead it was a third-party beneficiary because he failed to cite any contractual provisions between

the manufacturer and the seller that would indicate plaintiff was a third-party beneficiary of those

contracts).

  Third, and finally, the Court is not swayed by Plaintiff's policy argument that requiring

privity in this case would "essentially eviscerate the implied warranty of merchantability

altogether."  New York law makes it crystal clear that privity is a required element of such a

claim, and this Court is constrained by New York law when determining claims arising under

New York law.

  For all of the above reasons, the Court finds that Plaintiff's failure to allege facts

plausibly suggesting that she was in privity with Defendant requires dismissal of her claim for

breach of implied warranty.

  **D.**  **Whether Plaintiff's Claim for Breach of Express Warranty Must Be Dismissed**

  After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memoranda of law.  *See, supra,* Part I.B. of this Decision and

Order.  To those reasons, the Court adds the following analysis.

  The only ground on which Defendant bases its request for the dismissal of Plaintiff's

claim for the breach of express warranty is that the warranty does not cover the design defect,

which it argues is the only defect plausibly alleged by Plaintiff in the Complaint; Defendant does not otherwise argue that Plaintiff has not stated a claim for breach of express warranty. (Dkt. No. 8, Attach. 2, at 24-25 [Def.'s Mem. of Law].)

Courts in this circuit have found that a warranty protecting "defects in materials or workmanship" covers manufacturing defects but not design defects. *See Haag*, 294 F. Supp. 3d at 105 ("It is well settled that where, as here, a warranty protects against defects in 'materials and workmanship,' the warranty covers manufacturing defects, but not design defects."); *Miller v. Hyundai Motor Am.*, 15-CV-4722, 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017) ("A warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects."); *Catalano*, 167 F. Supp. 3d at 554 (citing *Garcia v. Crysler Grp. LLC*, 127 F. Supp. 3d 212, 226-27 [S.D.N.Y. 2015]); *Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT&T Commc'ns. Inc.*, 92-CV-7862, 1996 WL 312535, at *7 (S.D.N.Y. June 10, 1996) ("[I]n limiting its warranty to claims based on defective materials or workmanship, Article 5 excludes claims of *design* defect.") (emphasis in original). "A manufacturing defect is a mistake–an unintended deviation from normal or routine production that renders an ordinarily safe product dangerous," while design defects "'involve products made in the precise manner intended by the manufacturer,' which are unreasonably dangerous as designed." *Miller*, 2017 WL 4382339, at *4 (quoting *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 363 [2d Cir. 1997]); *accord, Catalano*, 167 F. Supp. 3d at 554 (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 [2d Cir. 1997]).

Multiple courts have indicated that determining whether the alleged defect arose from a faulty design or faulty manufacturing cannot be ascertained absent discovery because information

related to the manufacturer's intention is within the sole possession of the manufacturer. *See Haag*, 294 F. Supp. 3d at 106; *Miller*, 2017 WL 4382339, at *5; *Marshall*, 51 F. Supp. 3d 451, 467 (S.D.N.Y. 2014). However, those cases also involved findings that the plaintiff had made sufficiently broad allegations to encompass defects in material and workmanship. *See Haag*, 294 F. Supp. 3d at 106; *Marshall*, 51 F. Supp. 3d at 467.

Here, although Plaintiff made passing notations of a defect in material, manufacturing and/or workmanship (i.e., that one of the class questions is whether the transmission contains either type of defect, that the transmission was "not adequately designed, manufactured, and/or tested," that the vehicles were "designed and manufactured in such a way as to present an inherent safety risk"), her overall Complaint suggests that she is really alleging a design defect (i.e., that the vehicle she purchased "contained the defectively designed 9-Speed Transmission," citing to design failure mode analysis testing and fundamental design guidelines, and that the transmission is "defectively designed and unsafe"). (Dkt. No. 1, at ¶¶ 14, 32, 56, 69, 103, 114 [Pl.'s Compl.].) Given that Plaintiff's references to a defect in manufacturing or workmanship are conclusory and unsupported by any factual allegations, and that her Complaint overall suggests that she is alleging a design defect, the Court finds that the limited references to a defect in manufacturing or workmanship do not plausibly suggest that she was actually intending to allege a defect in manufacturing or workmanship.

Additionally, the court in *Miller* noted that, where the plaintiff has asserted a defect on behalf of a putative class of persons who all purchased vehicles with the same alleged defect, such class action "contradicts the nature of manufacturing defects, which, 'by definition, are imperfections that inevitable occur in a typically small percentage of products,'" particularly

where the plaintiff has failed to allege a flaw in the larger manufacturing process. *Miller*, 2017 WL 4382339, at *5. Plaintiff has not alleged any such widespread flaw in the manufacturing process and has brought her claims in the context of a class action in which she alleges that the defect was present in all Class Vehicles. As a result, Plaintiff's allegations and the nature of this action belie her current assertion that she intended to allege a defect in manufacturing and/or workmanship.

Lastly, the Court is not persuaded by Plaintiff's argument that finding design defects are excluded from the warranty would cause the warranty to fail its essential purpose. (Dkt. No. 23, at 26-27 [Pl.'s Opp'n Mem. of Law].) Rather, there is no indication that the warranty would not cover defects other than design defects, and thus it would still fulfill its essential purpose; the mere fact that a warranty does not cover a certain type of defect does not make it somehow useless.

Because the Court therefore finds that (a) the only defect Plaintiff has plausibly alleged is a design defect, and (b) design defects are not covered by the Limited Warranty, Plaintiff cannot assert a claim for breach of the Limited Warranty based on the alleged design defect. Consequently, the Court grants Defendant's motion as to this claim.

### E. Whether Plaintiff's Claim Pursuant to the MMWA Must Be Dismissed

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's opposition memorandum of law. *See, supra*, Part I.B. of this Decision and Order. To those reasons, the Court adds the following analysis.

"To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Gr. LLC*, 127 F.

Supp. 3d 212, 232 (S.D.N.Y. 2015). To that effect, "claims under the [MMWA] stand or fall with the express and implied warranty claims under state law." *Cali*, 2011 WL 383952, at *4.

Because the Court has already determined that Plaintiff's claims for breach of express or implied warranty were not sufficiently pled to survive Defendant's motion, Plaintiff's claim pursuant to the MMWA must also be dismissed. *See Garcia*, 127 F. Supp. 3d at 232 (finding that the MMWA claims of two plaintiffs survived because those plaintiff has stated plausible claims for breach of either an express or implied warranty); *Cali*, 2011 WL 383952, at *4 (dismissing MMWA claim where the state law claims for breach of express and implied warranties had been dismissed).

### F. Whether Plaintiff's Claim for Unjust Enrichment Must Be Dismissed

After careful consideration, the Court answers this question in the negative for the following reasons.

"Unjust enrichment is a quasi-contract claim viable only in the absence of an enforceable agreement between the parties governing the subject matter of the dispute." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) (citing *Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 [N.Y. 1987]). "The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). However, "unjust enrichment is not a catchall cause of action to be used when others fail"; rather, "[i]t is available only in the unusual situations when, though the defendant has not breached a contract or committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 N.Y.3d at 790. It is not available

where it "simply duplicates, or replaces, a conventional contract or tort claim." *Id.* at 790-91; *see also Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016) ("Courts will routinely dismiss an unjust enrichment claim that 'simply duplicates, or replaces, a conventional contract or tort claim.'").

Although Plaintiff cites cases in which courts have allowed unjust enrichment claims to proceed as "alternative" claims to other contract or tort claims, Plaintiff misses a crucial point inherent in those cases: namely, that unjust enrichment claims were allowed as alternatives where there was some question as to the validity of the underlying agreement. *See St. John's Univ.,* 757 F. Supp. 2d at 184 (declining to dismiss unjust enrichment claim where the court could not determine at the motion to dismiss stage whether and to what extent the relevant agreement applied to the situation, noting that "dismissal of unjust enrichment claims is inappropriate when there is a genuine dispute over the enforceability of the alleged contract"); *Nat'l City Comm. Capital Co., LLC v. Global Golf, Inc.*, 09-CV-0307, 2009 WL 1437620, at *1 (E.D.N.Y. May 20, 2009) (recognizing that a claim for unjust enrichment could only be asserted in the absence of an agreement between the parties and noting that, if it found at a later stage that valid and enforceable agreement governed the subject matter at issue, such claim would be barred); *Maalouf v. Salomon Smith Barney, Inc.*, 02-CV-4770, 2003 WL 1858153, at *6 (S.D.N.Y. Apr. 10, 2003) (noting that "under New York law, the existence of a valid contract generally preempts a quasi-contract claim for unjust enrichment" and that conduct that falls under the contract is not covered by an unjust enrichment claim); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (N.Y. 2009) ("Where the parties have executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for

events arising out of that subject matter is ordinary precluded.").

Here, neither party disputes that Defendant executed a Limited Warranty to Plaintiff as part of her purchase of the relevant vehicle. Plaintiff's unjust enrichment claim is based on the alleged fact that she and the members of the New York subclass overpaid for defective cars and had been forced to pay other costs related to that defect. However, given that the Court has determined that Plaintiff has plausibly alleged only a design defect, and, given that design defects are not covered under the Limited Warranty, Plaintiff does not have an ability to sue and/or recover for breach of contract based on that design defect. The Court therefore finds that Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred. Defendant's motion on this claim must be denied.

### G. Whether the Class Allegations Should Be Dismissed

After careful consideration, the Court answers this question in the negative for the following reasons.

In this case, Defendant does not appear to argue that this Court lacks personal jurisdiction over it *per se*, but rather that Plaintiff has not established that it has personal jurisdiction over the claims of all of the putative class members. In particular, Defendant argues that the class allegations should be dismissed based on Plaintiff's inability to plead facts showing that the Court has either general or specific jurisdiction over the putative members of the nationwide Class. (Dkt. No. 8, Attach. 2, at 25-27 [Def.'s Mem. of Law].) The parties primarily dispute whether *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 137 S. Ct. 1773 (2017), applies to assessing personal jurisdiction in a class action.

In *Bristol-Myers Squibb*, the Supreme Court found that non-California-resident plaintiffs

in a mass personal injury action had not established that the California court had personal jurisdiction over their claims. *Bristol-Myers Squibb*, 137 S. Ct. 1773. In particular, the Supreme Court indicated that the fact that other (resident) plaintiffs obtained, were prescribed, and ingested the relevant pharmaceutical in California did not allow the state to assert specific jurisdiction over the non-residents' claims for the same injuries caused by that pharmaceutical. *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

This Court has previously applied the personal jurisdiction rationale of *Bristol-Myers Squibb* to out-of-state plaintiffs is a proposed class action suit. *Gazillo v. Ply Gem Indus., Inc.*, 17-CV-1077, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (D'Agostino, J.). However, it has been noted that the majority of the courts that have considered this issue have found that *Bristol-Myers Squibb* does not apply in the federal class action context. *See e.g., Bank v. CreditGuard of Am.*, 18-CV-1311, 2019 WL 1316966, at *12 n.11 (E.D.N.Y. Mar. 22, 2019) (collecting cases); *Chernus v. Logitech, Inc.*, 17-CV-0673, 2018 WL 1981481, at *7 (D. N.J. Apr. 27, 2018) (collecting cases).[8]

---

[8]     The Court is inclined to side with the majority based on the Supreme Court's own citation to and discussion of *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), in *Bristol-Myers Squibb*. *Bristol-Myers Squibb*, 137 S. Ct. at 1782-83. In *Phillips Petroleum*, the Supreme Court specifically rejected the defendant's argument that the Kansas court should not be able to exercise jurisdiction over the class members unless they had sufficient minimum contacts with the state, noting that burdens on an out-of-state defendant are much greater and much different than those on an out-of-state class plaintiff, particularly because the court and the named plaintiffs are charged with protecting those class members' interest throughout the litigation. *Phillips Petroleum*, 472 U.S. 797, 808-10 (1985). The Supreme Court held that "a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though the plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant," so long as minimal procedural due process procedures are in place to protect the rights of absent class-plaintiffs *Id.* at 811-12. In *Bristol-Myers Squibb*, the Supreme Court found that *Phillips* was irrelevant to the issue to be decided. *Bristol-Myers Squibb*, 137 S. Ct. at 1782-83. Although *Phillips* was related to absent class-action plaintiffs,

Here, Plaintiff has established personal jurisdiction over Defendant with respect to her claims: she has alleged that she is a New York citizen and resident who purchased the Class Vehicle in New York. (Dkt. No. 1, at ¶ 10 [Pl.'s Compl.].) Of note, Defendant does not appear to argue that personal jurisdiction is lacking as to Plaintiff's claims, because its argument seeks only to dismiss the class allegations from this action for lack of personal jurisdiction. (Dkt. No. 8, Attach. 2, at 25-27 [Def.'s Mem. of Law].) Plaintiff therefore has established that personal jurisdiction exists as to her claims.

Given that there is personal jurisdiction as to Plaintiff's claims, the Court follows the example of other courts in declining to address the issue of whether personal jurisdiction exists as to the nationwide class members until the class-certification stage. *See Suarez*, 2019 WL 1046662, at *6 (declining to address personal jurisdiction over out-of-state proposed class members at the motion to dismiss stage because, at that point, members are only potential members who are not, and may never be, joined in the action); *Chernus*, 2018 WL 1981481, at *7 (finding that, because there was no dispute as to whether the court had personal jurisdiction over the remaining named plaintiff, it was more prudent to address the issue of personal jurisdiction over the class members at the class certification stage).

The Court does find, however, that, as to the New York subclass identified by Plaintiff, which she defines as "[a]ll members of the Class who reside in New York State or purchased or

---

this Court sees no reason why present class-action plaintiffs would be held to a higher standard based on the *Phillips*' Court's discussion of the differences between haling an out-of-state defendant into a foreign court and haling an out-of-state class action plaintiff into a foreign court. This Court therefore does not believe that *Bristol-Myers Squibb* stands for the point of law that all putative class members in a class action must meet the requirements of personal jurisdiction imposed on plaintiffs in ordinary (non-class action) cases.

leased in New York State a 2016 Jeep Cherokee equipped with the 9-Speed Transmission," such allegations are supported by traditional personal jurisdiction minimum contacts. (Dkt. No. 1, at ¶ 50 [Pl.'s Compl.].) As a result, the Court finds that Plaintiff has adequately established specific personal jurisdiction as to the New York subclass even if *Bristol-Myers Squibb* is applied because the suit by Plaintiff and on their behalf arises out of an occurrence taking place in New York, and each putative member of that subclass has a related tie to New York.

Regardless of the findings above, the Court finds that, whether or not *Bristol-Myers Squibb* applies, Plaintiff's class action claims as to the nationwide class must be dismissed based on the Court's finding that Plaintiff's MMWA claim must be dismissed. The claim pursuant to the MMWA was the only claim asserted on behalf of the nationwide class and therefore the dismissal of that claim necessarily requires the dismissal of the nationwide putative class members. However, because the remaining state law claims were asserted on behalf of the New York subclass, that putative subclass need not be dismissed.

For all the above reasons, the Court denies Defendant's motion to dismiss the class allegations without prejudice as to the out-of-state putative class members, but with prejudice as to the New York subclass.

### H.  Whether Plaintiff's Request for Leave to Amend Should Be Granted

After careful consideration, the Court answers this question in the negative, although the Court finds that the denial should be without prejudice.

The Second Circuit found in *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21 (2d Cir. 2017), that it was improper to deny the plaintiff leave to amend his complaint with prejudice in the same order in which it granted the defendants' motion to dismiss because such action

essentially required the plaintiff to amend his complaint before he was notified of the deficiencies in his original complaint. *Cresci*, 693 F. App'x at 25. The Second Circuit explained that, by denying leave to replead with prejudice because a defendant has failed to submit a proposed amended complaint before learning what deficiencies in the original complaint that the Court might identify effectively deprives a plaintiff of a reasonable opportunity to seek leave to amend. *Id.* However, the case that *Cresci* relied on, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160 (2d Cir. 2015), specifically noted that "[o]ur opinion today, of course, leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility." *Loreley*, 797 F.3d at 190; *see also F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (upholding a district court's finding that amendment would be futile in a situation where the plaintiff requested leave to amend in its opposition to the motion to dismiss in the event that the complaint was found to be insufficient because the plaintiff offered no clue how the defects identified could be cured through an amendment).

Here, because the Court has absolutely no idea what Amended Complaint Plaintiff would file (given that she has not submitted a proposed Amended Complaint in support of her request for leave, in violation of Local Rule 7.1[a][4]),[9] the Court cannot possibly grant her request to amend at this time. However, the Court is unable to conclude that the defects in her dismissed claims are fatal such that an amendment would be futile. As a result, the Court denies Plaintiff's

---

[9] The Court note that, because Local Rule 7.1(a)(4) applies to "motions," and a "cross-motion" pursuant to Local Rule 7.1(c) (such as a request to amend a pleading contained in a response to a motion to dismiss that pleading) is a type of "motion," Local Rule 7.1(a)(4) indeed is intended to apply to requests to amend contained in a response to a motion to dismiss.

request to amend only without prejudice to the filing of a proper motion to amend within thirty (30) days of the date of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 8) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice**:

(a)     Plaintiff's First Claim pursuant to the MMWA;

(b)     Plaintiff's Second and Third Claims as they relate to the alleged omission;

(c)     Plaintiff's Fourth Claim for breach of implied warranty;

(d)     Plaintiff's Fifth Claim for breach of express warranty; and

and it is further

**ORDERED** that the following claims **SURVIVE** this motion to dismiss:

(a)     Plaintiff's Second and Third Claim as they relate to the alleged affirmative representations;

(b)     Plaintiff's Sixth Claim for unjust enrichment; and it is further

**ORDERED** that Defendant's request to dismiss the nationwide class is **<u>GRANTED</u>** (although the class allegations may be reinstated if, in her motion to amend, Plaintiff can allege facts plausibly suggesting her claim pursuant to the MMWA), while its request to dismiss the New York subclass is **<u>DENIED</u> with prejudice**; and it is further

**ORDERED** that Plaintiff has **THIRTY (30) DAYS** from the date of this Decision and Order to file a motion to amend as to her defective claims; and it is further

**ORDERED** that, should Plaintiff fail to file such a motion to amend within **THIRTY**

**(30) DAYS** of this Decision and Order, or should such a motion be denied, the dismissal of

Plaintiff's defective claims shall be converted from one without prejudice to one with prejudice

without further order of the Court.

Dated: August 1, 2019
     Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge